LEROY STEGNER v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY
COMPANY and Another.[1]

January 27, 1905.

Nos. 14,191—(203).

**Open Gates at Railroad Crossing.**

Open safety gates at a railroad street crossing are an implied assurance to a traveler upon the street that the tracks may be safely crossed. While such fact does not relieve him from exercising ordinary care before going upon the tracks, yet the fact must be taken into consideration in determining whether he exercised such care.

**Contributory Negligence.**

The question of the contributory negligence of the plaintiff's intestate in this case was one of fact.

Appeal by plaintiff from an order of the district court for Ramsey county, Bunn, J., denying a motion for a new trial. Reversed.

*Samuel A. Anderson,* for appellant.

*F. W. Root,* for respondents.

START, C. J.

Action to recover damages from the death of plaintiff's intestate, Jasper T. Stegner, who was killed by one of the defendant's engines at a street crossing in the city of Minneapolis on September 22, 1903, about nine o'clock in the evening. The trial court, on the defendant's motion, directed a verdict for it on the ground that the intestate was guilty of contributory negligence. The plaintiff appealed from an order denying his motion for a new trial.

The negligence of the defendant is not here contested; hence the sole question for our decision is whether the evidence, taking the most favorable view of it for the plaintiff, conclusively shows, as a matter of law, that the intestate was guilty of contributory negligence.

Evidence was given on the trial, although some of it was conflicting, tending to show: That the place of the accident was on the sidewalk

[1] Reported in 102 N. W. 205.

on East Twenty-Fourth street, running east and west, in the city of Minneapolis, at a point where the street was crossed by the tracks of the defendant's railroad, five in number, running approximately north and south across the street. That this was a populous part of the city, and the street was much used day and night by pedestrians and teams. That the defendant was required by an ordinance of the city to maintain the usual safety gates at this crossing, and to keep a flagman there, and operate the gates from seven o'clock in the morning until midnight of each day. That the defendant erected such gates, but at the time of the accident it did not operate them after 7.30 o'clock in the evening, nor did it have a flagman at the crossing. That at the time of the accident two safety gates on each side of the tracks, with lighted lanterns at the top of each, were raised. That there was a large electric arc light burning, suspended in the middle of the street, fifteen feet west of the west track, and about fifteen feet high, lighting the crossing; but the night was dark, and it was difficult to see up the track north so as to discern an object more than from sixty to one hundred feet away. That, so far as known, the intestate was a stranger to the locus in quo, and was first seen about nine o'clock in the evening going east on the sidewalk, on the north side of the street, at a point on the first or westerly track. Whether he stopped and looked and listened before stepping on this track does not appear by any direct evidence, but he walked across the track, and before he stopped he looked up and down. He stopped on the third track, counting from the west. Just then a train coming from the south, running some ten miles an hour, on the fourth track, came upon the crossing. That the intestate stood on the third track, waiting for the train to pass, while a witness who saw him took twenty steps (a matter of some ten or fifteen seconds), when he was struck. That it was the noise made by the train, and the sight of it, that caused him to stop where he did, to avoid being hit by it. That, while so standing on the track, an engine coming from the north, and running backwards over the crossing, with no headlight on the end towards the intestate, struck and killed him. That this engine was running, without giving any signal or warning of its approach, at a rate of speed which carried it from eighty to one hundred feet after the intestate was hit. That the bell of the train coming from the south was ringing at the time. Further, by reason of obstruc-

tions, the intestate could not see the approach of the train from the south until he was right at the crossing.

Assuming, for the purpose of this decision only, the facts which the evidence tends to establish, we are of the opinion that reasonable men might differ honestly as to the conclusions to be drawn from them as to the question of the contributory negligence of the intestate. Therefore we hold that it was a question of fact for the jury. It is quite clear that the question whether he was guilty of contributory negligence by reason of anything which he did or omitted to do after he was actually upon the crossing is one of fact, for he was then in a position of peril, whether he retraced his steps or stood still. He was then confronted with the emergency of two engines approaching the crossing from opposite directions at practically the same time. The time, place, and environment of the accident were well calculated to distract the attention of the intestate, and to disturb his judgment.

The pivotal question, then, is whether he was guilty of contributory negligence in going upon the crossing under the circumstances under which he did go. The raised safety gates are an important factor in the solution of this question. The intestate had a right to assume that, until his senses advised him to the contrary, the defendant had not negligently left the safety gates open, and also to assume that such raised gates were not false signals luring him into a death trap. Such gates were an implied assurance to him that the tracks upon the street might be safely crossed. While he was not relieved by this fact from exercising ordinary care before going upon the tracks, yet he was not required to exercise the same vigilance that would have been required of him if there had been no open gates. The fact that they were standing open must be taken into consideration in determining whether he exercised due care under the circumstances of this case. Woehrle v. Minnesota Transfer Ry. Co., 82 Minn. 165, 84 N. W. 791; Wilson v. New York, 18 R. I. 491, 29 Atl. 258; 2 Thompson, Neg. § 1613.

In the case last cited it is said: "The authorities are numerous, the only cases to the contrary that have come to our attention being cases in Pennsylvania, that open gates, or the absence of the usual signals of an approaching train or engine, are implied assurances that no train or engine is approaching the crossing with intent to cross the street, upon

which travelers on the street have a right to rely, and that, if a traveler on the street be injured while crossing the railroad in such circumstances, the question whether he was guilty of contributory negligence is for the jury."

Now, it does not conclusively appear from the undisputed evidence in this case that the intestate, before he went upon the crossing, knew, or might have known by the exercise of ordinary care, that, notwithstanding the gates were open, a train was about to cross the street, for there is evidence tending to show that his view was obstructed until he got upon the crossing. Even if he might have heard a train coming, it cannot be held, as a matter of law, that he must have known that it was going to cross the street before the gates were closed. It follows that the question whether he failed to exercise ordinary care under the circumstances of this particular case, which the evidence tends to establish, was one of fact for the jury.

Order reversed and a new trial granted.