OTT v. WILSON.

1. TRIAL—INSTRUCTIONS—PERSONAL INJURIES—PERMANENT INJURY
—DAMAGES.

In an action for personal injuries caused by defendant's
automobile colliding with a light wagon in which plain-
tiff was riding with her husband, where there was testi-
mony tending to show permanent injury, the trial court
was not in error in instructing the jury that if they
found permanent injuries they might award damages
therefor.

2. APPEAL AND ERROR—EXCESSIVE VERDICT—NEW TRIAL.

A complaint that the verdict is excessive will not be re-
viewed on error, where the question was not brought
to the attention of the trial court by a motion for new trial.

3. SAME—MORTALITY TABLES—SAVING QUESTION FOR REVIEW.

Where, upon the trial, the only objection to the intro-
duction of the mortality table was that there was no
testimony of permanent injuries, defendant is in no
position to urge, on error, that it was prejudicial error
to admit the table because it did not appear that plain-
tiff was a person in normal good health before the injury
complained of.

4. NEGLIGENCE — MOTOR VEHICLES — DUTY TO CARRY SUFFICIENT
LIGHT.

The driver of an automobile at night is required by law
to have such lights as will show objects immediately in
front of him, and he must have his machine under such
control as not to overtake and run down people within
the scope of his lights.

5. TRIAL—NEGLIGENCE—INSTRUCTIONS—MOTOR VEHICLES—DUTY TO
CARRY SUFFICIENT LIGHT.

In view of defendant's admission that a lantern, the only
light on his automobile, would not light up the road,
that he couldn't see anything ahead of him, that he
continued to operate his car without being able to see
ahead of him, and that he did not know of the presence

On duty of operator of automobile as to lights, see notes in
38 L. R. A. (N. S.) 489; 51 L. R. A. (N. S.) 996.
On validity and construction of regulations as to automobile
lights, see notes in L. R. A. 1918B, 916; 11 A. L. R. 1226.
On excessiveness of damages in actions for personal injuries
other than death see note in L. R. A. 1915F, 30.

of the wagon in which plaintiff was riding, or that it
was within a mile of him, until he hit it, there was no
error in the instruction of the court below that it was
defendant's duty to have such lights as would show objects
immediately in front of him, that he was required, by
law to have his car under such control as not to run
down other vehicles within the scope of his lights, etc.

6. APPEAL AND ERROR—DISMISSAL—REVIEW.

The question of defendant's right to appeal, where the
bill of exceptions was not signed within 80 days, was
not before this court for review on plaintiff's assignment
of error upon the action of the court below in overruling
a motion to dismiss the appeal; the proper practice being·
by motion in this court to dismiss the writ of error.

Error to Ottawa; Cross (Orien S.), J. Submitted
October 21, 1921. (Docket No. 70.) Decided De-
cember 21, 1921.

Case by Maggie Ott against Samuel A. Wilson for
personal injuries. Judgment for plaintiff. Defend-
ant brings error. Affirmed.

*Charles E. Misner,* for appellant.
*Lillie & Lillie,* for appellee.

STONE, J. This action was brought to recover
damages for personal injuries sustained by the plain-
tiff by reason of the claimed negligence of the defend-
ant in operating his automobile. The case is here
upon writ of error sued out by the defendant to re-
view a judgment of $1,000 against him. The plaintiff
by her declaration and evidence claimed that she was
riding in a light spring wagon drawn by two horses,
and driven by her husband, Julius Ott, now deceased,
on Beech Tree road about 6 miles south of Grand
Haven, at about 8 o'clock in the evening of November
15, 1919, going in a southerly direction toward her
home; that it was dark, and that her husband was
driving in a careful and prudent manner; that the

highway at the place where the plaintiff was injured had a 16 foot wide concrete roadbed, with a ditch within three to five feet from the west edge of the concrete; that her husband was driving on the extreme right or west side of the road, only the left wheels of the wagon being on the concrete; that at the time and place aforesaid the defendant was driving a Ford touring car, going in a northerly direction, without proper lights, and on the wrong side of the road, contrary to the provisions of the statute; that the headlights were not in working order on defendant's car, and that the only light on said car was a lantern hanging on the car (the position of the lantern being in dispute) ; that defendant while so operating said car in the center, or at the left of the center, of said concrete roadbed negligently struck with his car the wagon in which the plaintiff was riding, throwing her with great force to the ground, by reason of which she sustained severe injuries, became greatly bruised, sick, sore, lame and disordered and had so remained since that time, and that she had undergone great pain and suffering, the bodily injuries in particular being severe bruises on the left side resulting in pleurisy; that she had great difficulty in breathing because of the injuries to her side, and vomited blood for several days, and also suffered a hard blow on the frontal bone, rendering her unconscious and depressing or denting the frontal bone, and other injuries specifically described in the declaration. It appeared that her husband died on or about November 25, 1920, pending the suit, and by amendment to her declaration she claimed further damages subsequent to his death, by reason of said injuries, in that she was hindered and prevented from performing and transacting her lawful affairs and business.

The defendant claimed, upon the trial, and gave evidence tending to support his claim, that on the

night in question he was operating his automobile on the highway; that his lights went out and that he borrowed a lantern and hung it on the front of his car, and then proceeded to drive toward Grand Haven. He further claimed that he did not see the team and wagon in which plaintiff was riding and did not know it was there until his automobile collided with the wagon, claiming that his automobile struck the left front wheel of the wagon. He further claimed that the driver of the wagon in which plaintiff was riding was guilty of contributory negligence, and therefore plaintiff could not recover.

There was evidence pro and con upon the questions of the negligence of the defendant, and the claimed contributory negligence of the plaintiff's driver, and there was considerable conflict in the testimony.

A reading of the record satisfies us that the case presented questions of fact for the jury to determine, and that the case was properly submitted to the jury. The only errors assigned are in permitting the mortality table to be received in evidence, the refusal of the court to charge the jury as requested by the defendant, and in portions of the charge as given. The case was submitted upon briefs in this court. The first error discussed by counsel for appellant is in the following language in the charge of the court, upon the question of damages:

"If you find for the plaintiff she should be awarded compensation for all injuries, past and prospective. These are intended to embrace and include all the effects of the injury complained of, consisting of personal inconvenience, sickness, which the plaintiff endured, bodily and mental suffering, the disfigurement or permanent annoyance which is reasonably liable to be caused by the deformity resulting from the injury, if any."

It is the claim of appellant that there was no evidence of permanent injury and that at the most the

question was one of fact to be submitted to the jury. There was evidence of the family physician who was in attendance upon the plaintiff after the injury, tending to show permanent injury. The following occurred in his direct-examination:

"*Q.* Mrs. Ott is 59 years old. From your knowledge of Mrs. Ott and the injuries received, and her condition during your examinations, what can you say, Doctor, as to whether these conditions may be permanent or not in some degree?

"*A.* Could be.

"*Q.* What is your judgment on it, whether they will or will not be?

"*A.* I think they will be. She also complained of a sprained wrist."

This witness was recalled by the plaintiff and further testified:

"*Q.* Doctor, considering the age of Mrs. Ott what, if any, of the injuries you testified to yesterday would you say were liable to be permanent, or would be permanent?

"*A.* I should think that the injury to the stomach would be the one that would be most liable to be a permanent injury.

"*Q.* And any other of those injuries? What other ones?

"*A.* Well, to the head, the injury to the head would be the only other one I think that would be permanent.

"*Q.* The one to the head?

"*A.* Yes."

Upon cross-examination the following occurred:

"*Q.* You wouldn't say, Doctor, either one of these two injuries you have spoken about would be permanent, that is just simply a matter of an estimate?

"*A.* No, I wouldn't say that was absolutely a permanent injury, but I think that those would be the two that would be the most liable to be permanent injuries.

"*Q.* If there are any of them that would be permanent, it would be the injury to the head?

"*A.* Yes, and stomach.

"*Q.* You don't mean to say the stomach was injured by this accident?

"*A.* Why, she vomited blood for at least four or five days in large quantities.

"*Q.* How do you know that?

"*A.* How do I know what? That she vomited?

"*Q.* Yes.

"*A.* I was there and saw her vomit.

"*Q.* Were you there?

"*A.* At the house, yes, I took care of the lady?"

He further testified that he had not seen this woman in a professional capacity since January, 1920, but upon re-examination he testified that he examined her about the time of the commencement of the suit, which was June 14, 1920. The trial was on January 24 and 25, 1921. We have thus quoted somewhat at length to show that there was testimony for the jury to consider upon the subject of permanent injury. We do not understand that in the language in the charge complained of the jury were instructed that they must necessarily find that any of the plaintiff's injuries were permanent; but taking that portion of the charge together with the context, we think it sufficiently appears that the jury were simply instructed that if they found permanent injuries they might award damages therefor. This question bore upon the subject of damages, and it is claimed tended to show that the damages were excessive, and therefore that the charge was harmful to the defendant. There was no motion for a new trial. No opportunity was given to the trial court to pass upon the question of the amount of damages awarded by the jury. The rule upon this subject has been so often stated by this court that we hardly need refer to our decisions. See *Clarke v. Case,* 144 Mich. 150, where it is said:

"Error is also assigned on the ground that the verdict is not supported by the evidence. The proper

practice is to give the trial court an opportunity on a motion for a new trial to pass upon the question raised. As the record does not show that this was done, we cannot consider it."

In *Brockmiller* v. *Industrial Works,* 148 Mich. 642, 648, the following language was used:

"The only remaining error assigned necessary to discuss is that the damages awarded plaintiff are excessive. No motion for a new trial was made on this ground, nor was objection to the verdict as excessive made in the trial court. The general practice is that, unless a motion for a new trial upon that ground is made and denied, the question will not be considered in this court." Citing cases.

See, also, *McCue* v. *Railway,* 210 Mich. 554, 557.

We think it can be said that the question whether the injuries to the plaintiff were permanent was properly submitted to the jury, and we find no error in that part of the charge.

Error is assigned upon the admission in evidence of the table of mortality. In the testimony of the plaintiff the following occurred, and it is the only testimony in the record upon the subject:

"I had no physical ailments that I knew of before this accident, once in a while a headache. I wore a truss two or three years before the accident. I wear a truss because I am ruptured. It wasn't so bad, but after the accident it did get bad. I used to use only one side, now I have to have a double one. My claimed ailments are not due to this, headaches like these afterward and every day. I couldn't hardly move my neck."

It is urged by appellant that it was prejudicial error to admit the table because it did not appear that the plaintiff was a person in normal good health before the injury complained of, and cases are cited in support of the claim, the latest being *Norris* v. *Railway,* 193 Mich. 578. A reference to the record in the in-

stant case shows that when the table of mortality was offered in evidence the only objection was that there was no testimony of permanent injuries. No claim was there made that the evidence showed that the plaintiff was not a normal person as to health. Defendant is in no position to urge that question here. The attention of the circuit judge was not called to the subject, and we find no error in the ruling of the court.

There was evidence that the defendant had stated that the lantern hanging on the car was of no assistance, and that he thought he could have seen better without any light. On his cross-examination he testified, among other things, as follows:

"After I got the lantern on it would not light up the road so I could see. I couldn't see anything ahead of me. I continued to operate my car without being able to see anything ahead of me. The lantern did not burn out or blow out. I could see things to the right side of the road. I could tell I was in the road from the road on each side and that is all I could see. I couldn't tell exactly what part of the road I was on, I could tell I wasn't getting out of it. I was about in the center of the road. I could see on each side, see the edge of the road, but I couldn't see in front at all. * * * I said that I could have seen better without the lantern than with it."

And he further testified that he did not know of the presence of the wagon, or that it was within a mile of him until he hit it. Manifestly, such conduct was some evidence of negligence.

In the course of the charge, which was a very lengthy and full one, upon the subjects of defendant's duty in driving his car, the law of the road, the duty of the driver of a vehicle meeting another to drive to the right of the middle of the traveled portion of the road, and upon the subject generally as to what would constitute negligence of the defendant, and con-

tributory negligence of the plaintiff, the court used the following language, upon which error is assigned:

"I further charge that in this case defendant was required by law to have such lights as would show objects immediately in front of him, and he was required by law to have his Ford touring car under such control as not to run down other vehicles within the scope of his lights. One restriction on his speed is that he shall keep the machine under such control and operate it at such speed that he can stop the machine and avoid another traveler within the distance that the highway is illuminated with his lights."

In the same connection the following instruction was given, upon which error is assigned:

"You are instructed it would be negligence for a person to propel his automobile in a dark place in which he had to rely on the light of this lantern, attached to his machine, at a rate of speed faster than enabled him to stop or avoid any travelers within the radius of his light, or within the distance to which his light would disclose the existence of other travelers lawfully using the highway."

Was there error here?

In *Harnau* v. *Haight,* 189 Mich. 600, 610, speaking of the duty of the driver of an automobile, this court, through Justice PERSON, said:

"He is required by law to have such lights as will show objects immediately in front of him, and he must have his machine under such control as not to overtake and run down people within the scope of his lights."

In Huddy on Automobiles (5th Ed.), at page 376, the rule is stated as follows:

"One restriction on his speed is that he shall keep the machine under such control and operate it at such speed that he can stop the machine and avoid an obstruction, or other traveler within the distance that the highway is illuminated by his lights." Citing numerous cases, including *Harnan* v. *Haight, supra;*

*West Construction Co.* v. *White,* 130 Tenn. 520 (172 S. W. 301), and numerous other cases.

The same author states on the same page:

"Moreover, the rule applies where the regular lights are not working and the driver is using a lantern hung in front of his radiator. *Fisher* v. *O'Brien,* 99 Kan. 621 (162 Pac. 317, L. R. A. 1917F, 610)."

We find no error in this part of the charge.

We have examined with care the other assignments of error relating to the charge and the refusal to charge as requested, and find no reversible error therein. We shall not discuss them at length. The case was properly submitted, and the verdict a reasonable one.

We may say, in passing, that the plaintiff made a motion in the court below to dismiss the appeal because the bill of exceptions was not settled within 80 days. That motion was overruled by the circuit judge, and the bill of exceptions signed. The plaintiff has undertaken to assign error upon this ruling. No motion was made in this court to dismiss the writ of error, and, in our opinion, the question is not before us.

We find no reversible error in the record and the judgment of the circuit court is affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.