MARGARET GALLAGHER *v.* MONTPELIER & WELLS RIVER RAILROAD.

January Term, 1927.

Present:   WATSON, C. J., POWERS, SLACK, FISH, and MOULTON, JJ.

Opinion filed May 4, 1927.

*Railroads—Effect of Travelers' Belief That Track Was Unused
    on Railroad's Duty—Presumption That Warning Devices
    Maintained at Crossing Will Be Utilized; Train on Grade
    Crossing as Notice of Danger—Assumption That Track Is
    Clear—Track as Notice That Trains May Be Run Thereon
    —Reciprocal Rights of Railroad and Traveler on Highway
    —Right of Each to Assume That Other Will Exercise Due
    Care—Duty of Traveler on Highway Approaching Crossing
    To Look—Conduct of Travelers on Highway in Not Exer-
    cising Care Railroad Had Right To Assume They Would
    Exercise—When Failure To Maintain Warning Board Not
    Actionable.*

1.  Duty of railroad company to automobilists on highway crossing
    track at grade is unaffected by their belief that track was not
    used, unless such belief was induced by something said or
    done by railroad's officers or servants.

 2.  Where railroad company maintains flagman, gates, or other
    signals or warnings at crossing, public generally has right to
    presume that such safeguards will be reasonably maintained
    and attended, and, in absence of knowledge to contrary, fact
    that gates are open, automatic bell not ringing, or flagman
    absent from his post or giving no warning of danger is an
    assurance of safety upon which a traveler familiar with cross-
    ing may rely, within reasonable limits, but such assurance
    does not excuse travelers from using such precaution as a
    prudent person would use in like circumstances.

3.  Where a train is already occupying grade crossing as travelers on
    highway approach it, train itself is notice of existing danger.

4.  Travelers on highway in automobile approaching railroad cross-
    ing at grade *held* to have no right to assume that track would
    be clear, although track and roadbed tended to show disuse,
    warning board required by G. L. 5172 was absent, and such
    travelers in crossing track on number of other occasions had
    never seen train thereon.

5. Fact that railroad track is maintained across public highway is of itself notice to world that trains are likely to be run thereon.

6. Obligations, rights, and duties of railroads and travelers upon highway crossings are mutual and reciprocal, and neither has exclusive right of passage, railroad company having right to use its tracks, and public having right to use highway, and each being required to act with due regard for rights of the other.

7. Traveler on highway approaching railroad grade crossing has right to assume that it will not be obstructed unlawfully, or in such a manner as to cause him injury while he is in exercise of due care and caution, but his own conduct must measure up to that of a prudent and careful man in like circumstances, and railroad may rightfully act upon assumption that it will.

8. It is just as essential that traveler in automobile on highway approaching railroad crossing in nighttime keep his eyes open as that he adopt proper lights and speed, and railroad company has right to assume that he will do former as well as latter.

9. In action of tort against railroad for injuries received by automobilist when automobile in which plaintiff was riding struck freight train standing on infrequently used spur track at grade crossing in nighttime, *held* that evidence showed such lack of attention on part of occupants of automobile when approaching crossing as to show failure on their part to exercise care and caution which railroad had right to assume they would exercise, by reason of which defendant, not being bound to foresee and guard against such conduct, was not guilty of negligence in failing to give warnings by lights, or otherwise, of presence of train on crossing.

10. In such action, where it was not claimed, and evidence did not show, that absence of warning board at crossing directly contributed to accident, failure to maintain warning board, as required by G. L. 5172, was not actionable.

ACTION OF TORT against railroad for personal injuries to automobilist by automobile striking freight train standing on infrequently used spur track at grade crossing in the nighttime. Plea, general issue. Trial by jury at the June Term, 1924, Caledonia County, *Chase*, J., presiding. Verdict and judgment for the defendant. The plaintiff excepted. The opinion states the case. *Affirmed.*

*Dutton & Morse* for the plaintiff.

*H. C. Shurtleff* for the defendant.

SLACK, J.   The plaintiff seeks to recover for injuries that she sustained when an automobile owned and operated by her brother, and in which she was riding at the time, ran into a freight train of defendant's at a grade crossing about two miles southerly of Montpelier on the highway leading from that place to East Montpelier known as the "Roosevelt Trail." At the close of plaintiff's evidence, the court, on motion of defendant, directed a verdict in its favor solely on the ground that actionable negligence on its part did not appear, to which plaintiff excepted.   This exception presents the first question for review.

Defendant's railroad consists of two main lines of track, one extending from Montpelier to Barre and the other from Montpelier to Wells River.   Going southerly from Montpelier, these lines use the same track for a distance of about two miles, at which point the Barre line curves slightly to the west and the Wells River line curves sharply to the east.   Some distance southerly of the point of divergence these lines are connected by a spur track which permits the running of trains from Barre to Wells River, or *vice versa*, without going into Montpelier.   The highway over which plaintiff was traveling follows the general course of the Wells River line from Montpelier to a point beyond where the accident happened, and is located westerly and southerly of that line, which necessitates its crossing both the Barre line and the spur track.   It crosses the former by means of an overpass, and the latter at grade.   The accident occurred at the spur track crossing, which is 425 feet southeasterly of and farther from Montpelier than the overpass.   Going from the overpass towards the grade crossing, the direction in which plaintiff was traveling, the highway is straight for approximately 325 feet, and descends at a uniform grade of 6 per cent.; it then curves somewhat to the left, continuously to a point near the crossing, on a down grade of 1.6 per cent.   The spur track crossing, which is 375 feet from the intersection of that track with the Wells River line, and most of the spur track, which is 977 feet long, can be seen from the southerly end of the overpass in the day time.   While a view of the spur track from the crossing towards Barre is somewhat obstructed by trees and poles, the crossing, itself, and most of the spur track in the other

direction are plainly visible from the overpass. The accident occurred in the vicinity of nine o'clock in the evening of October 7, 1923. It was clear but dark at the time. The train which plaintiff ran into consisted of an engine and 28 freight cars, and was moving slowly over the crossing in the direction of Barre. It had proceeded far enough so that the automobile struck the fourteenth car from the engine.

Although the evidence tended to show that the bell was not rung nor the whistle sounded; since the plaintiff appears to attach no importance to these circumstances, we do not.

The plaintiff, in effect, concedes that if nothing had appeared other than that the automobile ran into the train as it was moving over the crossing the case would be controlled by *Gilman* v. *Central Vt. Ry. Co.*, 93 Vt. 340, 107 Atl. 122, 16 A. L. R. 1102, and the rule laid down in Huddy on Automobiles, § 681. But she insists that the facts in this case distinguish it from the Gilman Case and take it out of the general rule stated by Huddy. The facts which it is claimed do this are the absence of a warning board at the crossing as required by G. L. 5172; the condition of the track and roadbed on the spur line tending to show disuse of the same; the fact that both plaintiff and her brother had been over that highway frequently, she a dozen times and he fifty or sixty times that season prior to the accident, and neither had ever seen a train on the spur line, and both understood that that line was not used for train movements but that all trains went under the overpass, and the failure of defendant to give warning of the presence of the train on the crossing, all of which appeared in evidence. In effect, then, plaintiff's claim is that through its infrequent use of the spur track, the condition in which it maintained the same, and its failure to maintain a warning board at the crossing in question defendant gave implied assurance that that track was not used for train movements and, therefore, it was bound to give warning of the presence of a train on that crossing by a light, bell, flagman, or other means, which it failed to do in the instant case.

[1] Manifestly, the understanding of either plaintiff or her brother concerning defendant's use of the spur track unless occasioned by something said or done by defendant's officers or servants would not affect its duty to her.

[2-5] While it appears to be well settled that where a railroad company maintains a flagman, gates, or other signals or

warnings at a crossing, whether voluntarily (*Dolph* v. *New York, etc., R. R. Co.,* 74 Conn. 538, 51 Atl. 525; *Martin* v. *Baltimore & P. R. R. Co.,* 2 Marv. [Del.] 123, 42 Atl. 442), or by statutory requirement, the public generally has a right to presume that such safeguards will be reasonably maintained and attended (*Chicago, etc., R. R. Co.* v. *Blaul,* 175 Ill. 183, 51 N. E. 895), and in the absence of knowledge to the contrary (*Sights* v. *Louisville, etc., R. R. Co.,* 117 Ky. 436, 78 S. W. 173; *Stegner* v. *Chicago, etc., R. R. Co.,* 94 Minn. 166, 102 N. W. 205), the fact that the gates are open (*Stegner* v. *Chicago, etc., R. R. Co., supra*), or automatic bell not ringing (*Cleveland, etc., R. R. Co.* v. *Heine,* 28 Ind. App. 163, 62 N. E. 455), or that the flagman is absent from his post, or, if present, is not giving a warning of danger (*Dolph* v. *New York, etc., R. R. Co., supra; Martin* v. *Baltimore & P. R. R. Co., supra*), is an assurance of safety upon which a traveler familiar with the crossing may rely, within reasonable limits, such assurance does not excuse the traveler from using such precaution as a prudent person would use in like circumstances. 33 Cyc. 1029, 1030. While these cases, although involving the question of plaintiff's contributory negligence, rather than defendant's negligence, appear, at first, to lend support to plaintiff's claim in the instant case, it should be noted that they differ from this case in a most vital particular. There the traveler was induced by the railroad's conduct to go upon a clear, and apparently safe, crossing in front of an approaching train by which he was struck and injured, while here the traveler ran into a train already occupying the crossing, which train of itself was notice of existing danger. The plaintiff could not assume that the crossing was clear when it was in fact obstructed. Had she a right, in the circumstances, to approach it on the assumption that it would be clear? We think not. The conditions that existed at that crossing, aside from the absence of a warning board, were not materially different from those known to exist all over the country. It is a matter of common knowledge that some railroads are not used so much as others, and that all roadbeds do not receive like attention; but a traveler has no right to assume that a railroad has been abandoned simply because he never saw a train running over it, or its roadbed is not kept in the most approved condition, or there happens to be no warning board at a particular crossing. So long as a railroad track is maintained across a public highway that, of itself, is notice to

the world that trains are likely to be run thereon, and the mere existence of the conditions here shown does not justify an assumption to the contrary.  Much less where, as here, such conditions have existed for years.  The spur track was built in 1889. Plaintiff's evidence tended to show that there never had been a warning board at that crossing, and, for aught that appeared, the condition of the track and roadbed was not different for a year, or two, prior to the accident than it had always been.  It was not the case of a road formerly in constant use being given the appearance of disuse and abandonment by the removal of the warning board and the neglect of the track and roadbed.  Moreover, while plaintiff knew of the conditions complained of, she knew, too, what we assume to be the fact, that a highway crossing was maintained over that line suitable to accommodate the travel on one of the most frequented thoroughfares in the State, which of itself should have dispelled any assumption of disuse she might otherwise have entertained.

[6, 7]  The obligations, rights, and duties of railroads and travelers upon highway crossings are mutual and reciprocal; neither has an exclusive right of passage.  The railroad has a right to use its tracks, and the public have the right to use the highway, but each must act with due regard for the rights of the other.  22 R. C. L. 987, and cases there collected.  While a traveler on the highway by day or night has the right to assume that it will not be obstructed unlawfully or in such a manner as to cause him injury while he himself is in the exercise of due care and caution, he cannot close his eyes and go forward in reckless disregard of what may happen; his conduct must measure up to that of a careful and prudent person in like circumstances, and the railroad may rightfully act upon the assumption that it will.  In other words, a railroad company is not an insurer of the traveler, but the care and diligence required of it is to be measured by the care and diligence which it may rightfully assume will be exercised by him.  The law is stated thus in *Trask* v. *Boston & Maine Railroad,* 219 Mass. 410:  ''In order to charge the defendant with negligence it must be found that its employees, in the exercise of reasonable care, would have known that on account of the darkness the cars upon the crossing were such an obstruction that people traveling along the highway, in an automobile, at a reasonable rate of speed properly equipped with lights and carefully operated, would be liable to

come in collision with them." To the same effect is *Gage* v. *Boston & Maine Railroad,* 77 N. H. 289, 295, 90 Atl. 855, L. R. A. 1915A, 363. In *Philadelphia & R. Co.* v. *Dillon,* 31 Del. (1 W. W. Harrington) 247, 114 Atl. 62, 15 A. L. R. 894, it is said: "The trainmen of the defendant had a right to assume that a reasonably careful person driving an automobile on that highway at that time would adopt such lights and rate of speed as that he could and would bring his automobile to a standstill within the distance that he could plainly see the train of the defendant, and so avoid running his machine into it, and therefore these employees of the defendant company were not negligent in failing to give warning by lights, or otherwise, of the presence of the train as an obstruction to the highway." In *Lauson* v. *Town of Fond Du Lac,* 141 Wis. 57, 123 N. W. 629, 25 L. R. A. (N. S.) 40, 133 A. S. R. 30, it is said, "Driving an automobile over a country road on a dark, rainy night without light would indicate a well-defined intent on the part of the driver to commit suicide, rather than the exercise of ordinary care."

The following cases, in which it was held that plaintiff was guilty of contributory negligence as a matter of law, in driving an automobile along a public highway in the dark at such speed that it could not be stopped within the distance that objects could be seen ahead of it, afford some light on the degree of care which defendant had a right to assume plaintiff would exercise. *Spencer* v. *Taylor,* 219 Mich. 110, 188 N. W. 461; *Worden* v. *Chicago & N. W. Ry. Co.,* 180 Wis. 551, 193 N. W. 356; *Fisher* v. *O'Brien,* 99 Kan. 621, 162 Pac. 317, L. R. A. 1917F, 610; *Serfas* v. *Lehigh & N. E. Ry. Co.,* 270 Pa. 306, 113 Atl. 370, 14 A. L. R. 791; *Ott* v. *Wilson,* 216 Mich. 499, 185 N. W. 860; *Harnau* v. *Haight,* 189 Mich. 600, 155 N. W. 563; *Nadasky* v. *Public Service R. R. Co.,* 97 N. J. Law, 400, 117 Atl. 478.

[8] It is just as essential that a traveler in an automobile in the nighttime keep his eyes open as it is that he adopt proper lights and speed, and a railroad company has a right to assume that he will do the former as well as the latter.

[9] In the instant case, both occupants of the automobile were familiar with the location of the crossing, which was plainly visible from the overpass, except for the temporary condition of darkness. They were riding in a Buick runabout which was equipped with "good strong" lights that enabled them to see

ahead 40 feet on a level road. Yet, plaintiff testified that she did not see the train until they were within 6 feet of it when it was called to her attention by the remark of her brother that "We have hit it"; and he testified that he did not see the train until within 10 or 12 or 15 feet of it. The only reason given by the plaintiff for not seeing the train earlier appears in the following excerpt from her testimony:

"Q. Were you looking for a train on the night of the accident? A. No. Q. How did it happen you didn't look on that occasion? A. Well, I don't know why. Q. Just forgot it? A. It was dark, I guess, that was the reason. * * * Q. Did you just take it for granted there wasn't going to be one there and just go ahead regardless? A. I didn't think anything particular about that. Q. You didn't think about that at all? A. Not in particular. Q. Did you at all? A. I thought the trains were under the overpass, that is what I understood that is for. Q. But how about this spur, what were you thinking about that? A. I understood that was given up, there weren't any trains on it. Q. Because you thought that was given up you were going ahead regardless? A. He slowed down at the top of the bridge, I don't know. Q. Slowed down to 20 miles an hour? A. Yes. Q. Because you thought there was no trains running on that spur track, did you take it for granted you wouldn't meet one and keep on 20 miles an hour? A. I didn't think anything about that, one way or the other. Q. Didn't pay any attention to it? A. Probably not, I don't remember anything about it. * * * Q. You say the lights on your automobile were working? A. Yes. Q. They were good strong lights? A. Yes. Q. Do you know why you didn't see the train with those lights shining ahead? A. No. Q. Miss Gallagher, did that fact (not having seen trains on the crossing before) have any influence at all with you on the night of the accident about whether you would go ahead and take it for granted there was no train there? A. In a small way. Q. In a small way? A. Yes."

The brother first testified that his failure to see the train before he did was due to the fact that his lights' rays were obstructed by the highway fence, and that because traveling on a down grade his lights would not show a train on the crossing when 40 feet from it. The fallacy of this claim is shown by the location of the fence on the plan which is one of plaintiff's exhibits and the testimony of the civil engineer as to the grade

of the highway at that point, neither of which was disputed. Moreover, the witness testified on cross-examination that possibly his lights did pick up the train when 40 feet from it, and that he didn't know, and could give no reason, why he did not see the train before. He later testified, on redirect examination, that as he approached the crossing his attention to it was influenced by what he had observed, namely, the absence of a warning board, the condition of the track and roadbed, and the fact that he had never seen a train on that track and, on recross-examination, "I wasn't looking for a train" because "I believed that the track was not being used." This witness testified that they were traveling about 20 miles an hour when he first saw the train, and that he had reduced the speed to 6 or 8 miles an hour when they struck it. We assume this latter testimony to be true, as we must on this question, although the extent to which the automobile was demolished by its contact with the train would indicate that it was moving at a much greater speed. Obviously, if the speed of the automobile was such that it could be reduced 12 to 14 miles per hour in traveling 15 feet, the automobile could have been stopped in less than 40 feet. It follows that if its occupants had been looking where a careful and prudent person operating an automobile on the highway in the nighttime would have looked, to the road ahead of him, they would have seen the train in season to have avoided the accident. We think this evidence clearly shows that this accident was due to the lack of attention on the part of the occupants of the automobile as they approached the crossing, that therein they failed to exercise the care and caution which defendant had a right to assume a traveler upon the highway would exercise, and, since defendant was not bound to foresee and guard against such conduct on their part, it was not guilty of negligence in failing to give warning by lights, or otherwise, of the presence of the train on the crossing. *Trask* v. *Boston & Maine Railroad, supra; Gage* v. *Boston & Maine Railroad, supra; Philadelphia & R. Co.* v. *Dillon, supra.*

[10]  It is not claimed, nor could it well be in the circumstances, that the absence of a warning board contributed directly to the accident, therefore, defendant's failure to maintain one was not actionable so far as the plaintiff is concerned. *Hatch* v. *Daniels,* 96 Vt. 89, 117 Atl. 105; *Morier* v. *Hines, Director Gen.,* 81 N. H. 48, 122 Atl. 330.

The result reached makes consideration of other exceptions saved unnecessary.

*Judgment affirmed.*