The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court.

## MISSOURI–KANSAS–TEXAS R. CO. OF TEXAS v. McLAIN.

### No. 2073—6877.

Commission of Appeals of Texas, Section A.

May 19, 1937.

Chas. C. Huff, G. H. Penland, J. M. Chambers, Touchstone, Wight, Gormley & Price, O. O. Touchstone, and Hobart Price, all of Dallas, for plaintiff in error.

Mack L. Vickrey and Carden, Starling, Carden & Hemphill, all of Dallas, for defendant in error.

GERMAN, Commissioner.

Defendant in error, Mrs. Annie E. McLain, instituted this suit in the district court of Dallas county against plaintiff in error, Missouri-Kansas-Texas Railroad Company, to recover damages for the death of her husband. The parties will be designated as in the trial court.

Charles M. McLain, husband of plaintiff, was killed about 6 o'clock a. m., Jan-

uary 11, 1931. Just prior to his death, he had been working as a watchman and was returning from his place of work to his home in the city of Dallas, walking southerly along Greenville avenue. This avenue runs generally north and south, and beyond the city limits of the city of Dallas constitutes one of the principal highways of the state. At the place where McLain was killed, the highway is crossed by the main line of the railroad and by a switch track, both of which run approximately east and west. This is just within the city limits. The switch track is north of the main line and the north rail of the main line is approximately 9 feet from the south rail of the switch track. The highway has a pavement of about 20 feet in width and appears to have level shoulders on both sides several feet in width. At the point where the railroad tracks cross the highway the shoulders are narrowed to almost the pavement. The crossing over the tracks is raised to about a level with the rails so that the highway is practically smooth at the crossing. From the side track north for a distance of about 400 feet, the pavement is straight and practically level. On the right hand side of the highway approaching from the north, and within a distance of approximately 400 feet, there are four warning signs giving notice of the crossing.

On the morning when McLain was killed, the crossing was blocked by a freight train on the main line containing 36 cars and a caboose, a box car standing across the highway. The crossing had been blocked for more than five minutes when the accident which is supposed to have caused the death of McLain occurred. A few minutes before the accident, McLain was seen going south on the highway toward the place where the same was blocked by the train. Shortly after he was seen going toward the crossing, a Mr. and Mrs. Wilmeth approached the crossing from the north in an automobile. Their car was equipped with good headlights, which were burning, but possibly dimmed to some extent by a mist. Both parties were looking straight ahead and neither of them saw McLain on the highway at the crossing. According to Mr. Wilmeth, he was driving his car at a speed of about 20 miles per hour and was on the right-hand side of the pavement. When he reached a point some 40 to 75 feet from the box car, he dis-

covered same on the crossing. He applied the emergency brake, but at what distance from the box car it was applied is not shown, and the car slid on account of the damp condition of the pavement. According to his statement, when the front wheels of his automobile struck the north rail of the sidetrack, the car turned around, its rear end turning to the left (east), and in doing so the back of the car near the left corner struck the box car. Taking into consideration the distance between the two tracks and the width of the switch track and the distance between the front wheels of the automobile and the back of same, the rear end of the automobile must have been approximately 21 feet from the box car when it began making its turn. After turning around in the highway so that its rear end came in contact with the box car, the automobile came to a stop, its front being in approximately the direction from which the car had come. Mr. Wilmeth was thrown from the car onto the west side of the highway. After recovering himself, he started around the back end of the car, and between it and the box car, and on the west side of the highway between the switch track and the main line track, he found the body of Mr. McLain. He was lying with his head in the direction of northwest and his feet were some 2 feet from the rail of the track on which the box car was standing. McLain was dead and his body was bruised and bleeding. There was no evidence of any blood or other signs on either the box car or the rear end of the automobile indicating that the deceased had been caught between the automobile and the box car. Neither Mr. nor Mrs. Wilmeth saw McLain before he was found dead, and they did not know when the automobile struck him.

Wilmeth testified that he was familiar with the road and knew of the railroad crossing, and unconsciously slowed down for it. He further testified that on account of the fact that he did not see the box car until he was within a short distance of same, he was caused to lose control of his machine, and that was the cause of its skidding and turning around in the highway. The negligence of defendant because of having obstructed the highway for more than five minutes is not questioned. Defendant contends, however, that there was no causal connection between this negligence and the death of McLain. On the contrary, it appears to

be the theory of plaintiff that the negligence of the railway company in blocking the crossing was the cause of Wilmeth losing control of his automobile, which in turn was the cause of the car turning around in the highway and coming in contact with McLain, and in this manner the negligence of the defendant was the proximate cause of the death of McLain. This becomes evident from certain issues submitted to the jury. In answer to the first three questions submitted, the jury found as follows:

(1) Mr. Wilmeth lost control of his automobile as he approached the railway track.

(2) After Wilmeth lost control of his automobile, it came in contact with Mr. McLain.

(3) At the time Wilmeth lost control of his automobile, McLain was on either the paved or unpaved portion of the public highway with a view of crossing to the other side of the railway track when it was clear.

It was further found that as between Wilmeth and the deceased the accident was unavoidable.

There were several findings by the jury that the negligence of the defendant was the proximate cause of the death of deceased, but it is obvious that this could not be true except upon the theory that defendant's negligence caused the loss of control of the automobile, its consequent turning in the road, and its contact with McLain, resulting in his death. According to these findings, the contact of the automobile with the deceased was the cause of his death. A judgment in favor of plaintiff by the trial court was affirmed by the Court of Civil Appeals. 74 S.W. (2d) 166.

In more than one way defendant presents the question that the obstruction of the crossing, although constituting negligence, was not the proximate cause of the death of McLain. This contention is upheld.

■ It is the settled law of this state that "a prior or remote cause cannot be made the basis of an action for damages if it does nothing more than furnish the condition or give rise to the occasion which makes the injury possible, if such injury is the result of some other cause which reasonable minds would not have anticipated, even though the injury would not have occurred but for such condition."

Phoenix Refining Company v. Tips, 125 Tex. 69, 81 S.W. (2d) 60, 61.

In this instance McLain's death was undoubtedly due to being struck by the automobile, and the negligence of defendant in obstructing the crossing did nothing more than furnish the condition, or give rise to the occasion, which made his death possible. City of Dallas v. Maxwell (Tex. Com.App.) 248 S.W. 667, 671, 27 A.L.R. 927; Orton v. Pennsylvania Railway Company (C.C.A.) 7 F.(2d) 36; Gilman v. Central Vt. Railway Company, 93 Vt. 340, 107 A. 122, 16 A.L.R. 1102; Pennsylvania Railway Company v. Huss, 96 Ind. App. 71, 180 N.E. 919, 923; Hendley v. Chicago, etc., Railway Company, 198 Wis. 569, 225 N.W. 205; Morley v. Cleveland, etc., Railway Company, 100 Ind.App. 515, 194 N.E. 806, 814.

■ This, however, is not necessarily decisive of the case. Negligence creating a condition may become the proximate cause of an injury, even though the active cause is some intervening agency, if the fact of the intervening agency could have been under all the circumstances reasonably anticipated. If it could not have been foreseen, the intervening agency will be regarded as the proximate cause. In the case of Paris & G. N. Railway Company v. Stafford (Tex.Com.App.) 53 S.W.(2d) 1019, 1021, the court quoted with approval the following language: "On the other hand, if the agency intervening was one over which the original tort-feasor had no control, and which was not put in motion by the original wrongful act; and if the character of the intervening agent, and the manner of the intervention, were such as, under the circumstances, could not reasonably have been expected to occur in the ordinary course of nature and according to common experience—then such independent agency so intervening will be treated as the sole proximate cause, and the original wrongful act will be treated as only a condition."

■ According to the finding of the jury, the loss of control by Wilmeth of his automobile was the active cause of McLain's death. In the case of City of Dallas v. Maxwell, supra, in an opinion adopted by the Supreme Court, it was held that the loss of control of an automobile while being driven is one of those unusual and extraordinary events which cannot be anticipated or foreseen as the result of a mere passing negligence. Because of the

aptness of the language in principle to the present case, we quote as follows:

"We are not unmindful of the obvious fact that motor-driven vehicles do become defective and unmanageable, that horses and other animals become frightened and control over them is lost, and that drivers are sometimes negligent, and accidents more or less serious result. In a sense all such occurrences are foreseeable. But, when not brought about by some defects in the highway, they are not incident to ordinary travel, and do not happen as a result of the ordinary use of highways— that use for which they are designed. When and where they may happen and the attendant consequences are matters of the barest chance and purest speculation. If in contemplation of law they were foreseeable, and therefore to be guarded against, then no limitations could be set to mark the bounds of a city's duty in the construction and maintenance of its highways. These occurrences might take place anywhere at any time, and to impose liability for their harmful results would in effect make the municipality an insurer of the traveler's safety. We have included negligence of the driver in this list of occurrences for the reason that such negligence is not a defense where the injured party is not the driver and not in such relation to him as to share in the responsibility for his negligence, as was the case in this suit. It may be urged that the question of anticipation of results is not involved in determining responsibility for the failure to guard against the consequences attendant upon occurrences of this character; that nonliability may very properly be denied on the ground that there is no breach of duty where the damage arises from an occurrence which is unusual, because it does not take place in the course of ordinary use of the highway, to which alone the city's duty is applicable. We do not care to argue this suggestion; we merely present it with the statement that the authorities, in reaching the conclusion of nonliability, quite generally hold that occurrences of this nature are unusual and extraordinary, and therefore are not to be anticipated or guarded against.

"The weight of authority, which to our mind is in accord with sound principles, is to the effect that, where the injury to the traveler results from loss of entire control and direction of an animal or machine, the occurrence falls within the domain of the unusual and extraordinary, and therefore, in contemplation of law, of the unforeseeable. Of course, this holding has no application to those cases in which some defect in the street was a contributing cause toward rendering the animal or machine uncontrollable."

It seems to be universally recognized that trainmen in charge of a train which has blocked a public crossing with an object which is easily discernible, like a box car, have a right to assume that one traveling a highway and approaching the obstruction will adopt suitable lights and such a rate of speed as that he can bring his automobile to a stop before coming in contact with the obstruction, and consequently accidents by reason of an automobile driver running his car into a train on a crossing, whether standing or moving, cannot reasonably be foreseen and anticipated as a natural result of blocking the crossing. In addition to those cited above, the following are a few of the illustrative cases: Texas & N. O. Ry. Co. v. Stratton (Tex.Civ.App.) 74 S.W.(2d) 741; Wichita Valley Ry. Co. v. Fite (Tex. Civ.App.) 78 S.W.(2d) 714; Gage v. Boston Ry. Co., 77 N.H. 289, 90 A. 855, L.R.A.1915A, 363; Gallagher v. Montpelier Ry. Co., 100 Vt. 299, 137 A. 207, 52 A.L.R. 744; St. Louis-S. F. Ry. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A.L.R. 1110, and annotation; Philadelphia & R. R. Co. v. Dillon, 1 W. W. Harr. (Del.) 247, 114 A. 62, 15 A.L.R. 894, and annotation.

While liability of the railway company in such cases has almost universally been denied, sometimes on the ground that the negligence of the driver was the sole proximate cause of the injury, and sometimes upon the theory that the occurrence could not have been reasonably anticipated by the railroad company, we think that as applicable to the situation in this case it is correct to put the decision upon the ground that the accident causing the death of McLain could not have been reasonably anticipated. In order to hold the railroad company liable on the theory that the blocking of the crossing was the proximate cause of the death of McLain, it would not only be necessary to hold that the railroad company could have reasonably foreseen that Wilmeth would approach the crossing in the manner he did, but could have also anticipated that in the ordinary and usual course of events Wil—

meth in approaching the crossing would lose control of his automobile, that same would skid and turn around in the highway as it did, and in doing so would strike a person standing on the side of the highway, causing him injury.

In supplementing the cases cited above upon the question of proximate cause, the following cases in principle are directly in point on the proposition that defendant could not have reasonably anticipated the particular occurrence which caused the death of McLain: De Moss v. Kansas City Railways Co., 296 Mo. 526, 246 S.W. 566; Hinnant v. Atlantic C. L. Railway Company, 202 N.C. 489, 163 S.E. 555; Atlantic, etc., Railway Company v. Mullis, 43 Ga.App. 692, 159 S.E. 893; Dandino v. New York C. Railway Company, 247 App.Div. 570, 288 N.Y.S. 129; Gable v. Kriege (Iowa) 267 N.W. 86, 105 A.L.R. 539, 546.

The judgments of the Court of Civil Appeals and of the trial court are reversed, and judgment is here rendered in favor of plaintiff in error.

Opinion adopted by the Supreme Court.