# Nellie Fuller, Appellee, v. Peoria & Pekin Union Railway Company, Appellant.

## Gen. No. 5,471.

1. RAILROADS—*functions of flagmen and gates.* The functions of a flagman and of gates and of lights are to warn travelers of approaching trains. It is not the duty of a flagman to hold the heads of horses while a train is passing by or to wave his flag while the train is passing. It is not required that gates shall be so strong that a team cannot be driven through them, nor that they shall form an impassable barrier while a train is passing. After a passing train has reached a crossing and the parties riding in a vehicle approaching the crossing know that the train is upon the crossing, flagman and gates and lights have performed their functions.

2. EVIDENCE—*of what judicial notice taken.* Courts take judicial notice of the course of the heavenly bodies.

3. NEGLIGENCE—*when absence of flagman or gates or lights does not confer cause of action.* Absence of a flagman and gates at a railroad crossing, likewise insufficiency of lights, will not confer a cause of action if the injury sued for did not proximately result therefrom.

Action in case for personal injuries. Appeal from the Circuit Court of Peoria county; the Hon. N. E. WORTHINGTON, Judge, presiding. Heard in this court at the April term, 1911. Reversed. Opinion filed October 13, 1911.

STEVENS, MILLER & ELLIOTT, for appellant.

ROBERT N. McCORMICK and DAILEY & MILLER, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

In the extreme southerly part of the city of Peoria Krause avenue and the railway tracks of appellant cross each other diagonally. On September 27, 1909, Marcel Koebel was driving a light wagon on Krause

avenue and had in front a high seat on which he was
sitting and with him Mrs. Nellie Fuller and Mrs. Pearl
Zerwekh. This was a brewery wagon and it was used
by Koebel at the brewery and it was drawn by two
horses owned by Koebel. Mrs. Fuller and her children
and Mrs. Zerwekh had been camping by the river, and
Koebel had come for them and their camping equip-
ment and had the children and the equipment in the
back of the wagon, including beer bottles. The time
was about seven or eight o'clock p. m. As this vehicle
approached the railroad crossing a train of the Iowa
Central Railroad Company was going over the crossing
and Koebel stopped about 100 feet from the crossing.
There was an arc light 230 feet west of the crossing
and another 280 feet east of the crossing, both throwing
their light upon the crossing. The train was going
northeasterly. There were a number of coal cars near
the engine, then a number of box cars, then seven flat
cars, then more box cars. A brakeman was riding on
top of the rear car carrying a lighted lantern. There
was no flagman and there were no gates. When the
coal cars and box cars had gone over the crossing Koe-
bel started his team and drove them sideways into one
of the flat cars, thus injuring the shoulder of one of the
horses. The team then turned, tipped over the wagon,
tipped out the contents and ran away. Mrs. Fuller was
injured and brought this suit against the company hav-
ing control of the railway tracks to recover damages
for her injuries, and on a jury trial had a verdict and
a judgment for $1,500 from which defendant below ap-
peals.

Each count of the declaration stated the condition
of the crossing and that it was dangerous. The first
count charged as negligence the failure to have a flag-
man at the crossing; the second count a failure to have
the crossing properly lighted; the third count a failure
to erect gates, barriers or some signal device; the
fourth count general negligence on the part of those

operating the train.   Each count charged that the injury was caused by the locomotive or locomotive and train of cars running upon and against and striking the team or vehicle.   At the close of plaintiff's evidence and again at the close of all the evidence appellant moved to direct a verdict in its favor because of a variance between the declaration and the proof, in that the declaration averred that the train and engine ran into and struck the team and vehicle, while the evidence showed that the team ran into and struck the side of one of the cars.   By these motions the attention of appellee was called to the variance.   She did not offer to amend her declaration, but the motions were denied.   Apparently, in the absence   of any amendment by appellee, these motions   should have been granted.   If the driver had brought this suit, it is obvious that his contributory negligence in driving into the train would have prevented his recovery, for the reasons and upon the authorities given by us in Metropolitan Trust & Savings Bank v. C. B. & Q. R. R. Co., 150 Ill. App. 407.   But appellee contends that her right to recover is not affected by the negligence of the driver, and, without passing upon that question, we prefer to place our decision upon another ground.

The office of a flagman and of gates and of lights is to warn travellers of approaching trains.   It is not the duty of a flagman to hold the heads of the horses while a train passes by or to wave his flag while the train is passing.   It is not required   that gates   shall be so strong that a team cannot be driven through them, nor that they shall form an impassible barrier while a train is passing.   After a passing train has reached the crossing, and the parties riding in a vehicle approaching the crossing know that the train is upon the crossing, flagman and gates and lights have performed their function.   If this vehicle had been driven upon the tracks and struck by the approaching train, and the party injured did not know that the train was ap-

proaching, then the absence of a flagman or of gates or of some other warning might well have been held to be negligence, giving a cause of action to the party injured. But here the train was on the crossing, and all the parties on that front seat saw it and knew it was going by. If they could not see the flat cars as they passed by, and the box cars still approaching and the brakeman and lighted lantern on the rear car, it is entirely improbable that they could have seen the flagman, if there had been one there. The two lights already described and the moon were strong enough so that after the accident people were able to see and pick up the beer bottles scattered on the ground. The calendar shows that at the time of this accident the moon was about half way from the horizon to the zenith, and was within two days of being a full moon. Courts take judicial notice of the course of the heavenly bodies. 1 Greenleaf on Evidence, sec. 5; Reynolds' Stephens' Digest of the Law of Evidence, Art. 58; Brown v. Piper, 91 U. S. 37. As there was light enough to show beer bottles on the ground there must have been light enough to show flat cars passing over the crossing. In other words, the accident was not caused by the absence of a flagman or of gates or by the insufficiency of the lights. We do not need to determine whether the presence of the beer bottles explains why the team was driven into the passing train.

The judgment is therefore reversed.

*Reversed.*

Finding of facts to be incorporated in the judgment: We find that appellant was not guilty of any negligence which caused the injury of which appellee complains.