## Indianapolis and Cincinnati Traction Company v. Thompson, Administrator.

[No. 10,964.    Filed March 7, 1922.    Rehearing denied June 1, 1922.    Transfer denied May 15, 1924.]

1. RAILROADS. — *Interurban.* — *Crossing Accidents.* — *Sounding Whistle.*—*Question for the Jury.*—In an action against an interurban railroad for death through defendant's negligence in failing to give warning of the approach of the car, where the evidence showed that the whistle was sounded between eighty and a hundred yards from the crossing, and at other points farther away, the question whether the sounding of the whistle at such points was or was not sufficient was a question for the jury.    p. 504.

2. NEGLIGENCE.—*Passenger in Automobile.*—*Driver's Negligence Not Imputed to.*—A passenger in an automobile, invited by the driver to take a pleasure ride, is not necessarily guilty of contributory negligence because of the driver's negligence, as the driver is not necessarily the agent of the passenger in driving the car.    p. 506.

3. RAILROADS.—*Interurban.*—*Crossing Accident.*—*Passenger in Automobile.*—*Contributory Negligence.*— Contributory negligence of an automobile passenger, killed by an interurban car at a highway crossing with which the deceased was not familiar, is a question for the jury.    p. 506.

Indianapolis, etc., Traction Co. *v*. Thompson, Admr.—81 Ind. App. 498.

4. EXECUTORS AND ADMINISTRATORS.—*Damages for Death by Wrongful Act.—Distribution.*—The damages recovered in an action for death by wrongful act do not become a part of the estate of the deceased in the hands of the administrator, but constitute a trust fund to be paid to the beneficiaries who, under the law, are entitled thereto.  p. 510.

5. DEATH BY WRONGFUL ACT.—*Damages Recovered.—Distribution to Classes of Beneficiaries.—Statute.*—Section 285 Burns 1914, Acts 1899 p. 405, provides for two classes of beneficiaries to whom the damages recovered are to be distributed, (1) the widow or widower (as the case may be) and children; (2) next of kin; the statute is construed to mean that if there is none of the first class entitled to take, the damages inure for the exclusive benefit of the second class.  p. 510.

6. DEATH BY WRONGFUL ACT.—*Damages Recovered.—Husband Abandoned Wife.—Not a Beneficiary.—Statute.*—Under §3036 Burns 1914, a husband who had abandoned his wife without just cause, and left her without support, forfeited his right as husband and widower to damages recovered for her death, and where there were no children, the damages would be distributed to her next of kin, if any.  p. 510.

7. DEATH BY WRONGFUL ACT.—*Damages Recovered.—Husband Abandoned Wife.—Dependent Parents Entitled to Damages. —Statute.*—Where the husband of a decedent killed by the wrongful act of another had abandoned her and left her without support, the wife's father and mother, who were, to a certain extent, dependent on her, were entitled to the damages recovered by an administrator in an action for her death under §285 Burns 1914.  p. 511.

8. RAILROADS.— *Interurban.— Crossing Accident.— Evidence.— View of Approaching Car.*—In an action against an interurban railroad for death at a highway crossing, there was no error in refusing to admit testimony that witness, standing 100 feet from defendant's track, could see a car approaching 900 feet from the crossing and that the car could be seen all the way from that point until it reached the crossing, as the uncontradicted evidence was that when the automobile in which decedent was riding reached the point where the witness made his observation, the interurban car was much more than 900 feet from the crossing and could not have been seen from that point at such time.  p. 512.

9. APPEAL.—*Review.—Motion for New Trial.—Merits of Cause Fairly Tried and Determined.*—Where the record shows that the merits of the cause have been fairly tried and determined, there was no error in overruling a motion for a new trial. p. 513.

From Hancock Circuit Court; *Jonas P. Walker,* Judge.

Action by Ulysses L. Thompson, as administrator of the estate of Ethel T. Lindsay, against the Indianapolis and Cincinnati Traction Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Joseph R. Morgan, Diven & Diven* and *Donald L. Smith,* for appellant.

*Ryan, Ruckelshaus & Ryan, Frank T. Brown* and *Omer Jackson,* for appellee.

McMahan, J.—Complaint against appellant for the alleged negligent killing of appellee's decedent. The errors assigned and relied upon for reversal are that the court erred in overruling the motion for judgment on the answers to the interrogatories and in overruling the motion for a new trial.

The complaint alleges that appellant owned and operated an interurban railway between Morristown and Indianapolis, said line running in a westerly direction from Morristown to Indianapolis; that at a point about one and a half miles west of Morristown, at what is known as Stop 16, appellant's tracks are laid in a long cut about ten feet deep, and, to the west of said stop, curve about five feet in a distance of 672 feet, and are up-grade about six feet in said distance; that about 185 feet south of appellant's tracks at said Stop 16, and running parallel therewith, are the tracks of the Cincinnati, Indianapolis and Western Railroad in a cut about fourteen feet deep; that a public highway runs from the south down into the cut and over said railroad track, then up an incline for a distance of eighty-five feet, where the public road is six feet higher than the railroad track, then north and down grade for about 100 feet, over and across the track of appellant at Stop 16, where said highway crosses appellant's railroad at

right angles; that on November 25, 1917, at night and while dark, appellee's decedent was riding as a guest in an automobile owned and operated by another on and along said public highway from the south, first crossing the railroad track where the view of the driver and the decedent and the other two occupants of the car to the north and toward the tracks of appellant and the crossing danger signal at said stop were obstructed by the hill between said steam and interurban railways; that the owner and driver of the automobile, after crossing the steam railroad, drove his automobile over said hill in the road and down the grade on to appellant's track at Stop 16; that before and after the automobile crossed the steam railroad, and continuously thereafter until it came within a short distance of appellant's railroad, the view of an object east of said highway at said stop was obstructed by a hill which began at the side of the highway and extended east about 1,100 feet, the top of which varied from three to fourteen feet higher than the level of the highway between the steam and interurban railways; that trees, a dwelling house, and other buildings on said hill also obstructed the view to the east, and also prevented the occupants of the automobile from hearing any noise from the east until within a short distance of appellant's tracks; that the decedent had no control over the automobile, and neither she nor the other occupants of the automobile, including the driver thereof, were familiar or acquainted with the road on which they were traveling, or the dangerous conditions and surroundings of the highway crossing; that appellant knew of the dangerous conditions and surroundings at said crossing; that the approach of appellant's car from the east could not be seen nor heard by those approaching its tracks from the south until they were within a short distance therefrom; that appellant negligently failed to give any warning of the

502    APPELLATE COURT OF INDIANA,

Indianapolis, etc., Traction Co. *v.* Thompson, Admr.—81 Ind. App. 498.

approach of one of its cars from the east until it was within fifty feet from said crossing, at which time, the automobile in which said decedent was riding was on appellant's tracks; that appellant neglected, as its said car was approaching said stop, to sound a whistle within 100 and not less than eighty rods from such crossing, and negligently ran its said car at the high and dangerous rate of speed of sixty miles an hour from the east over said crossing against the automobile in which the decedent was riding, thereby throwing and dragging said automobile a long distance before stopping its car; that after striking the automobile, appellant negligently failed to stop its car, and that by reason of appellant's alleged negligence, the decedent was dragged a long distance and killed; that appellant, by the use of ordinary care, could have stopped its car within 100 feet after striking the automobile and have prevented the death of the decedent; that the decedent, at the time of her death, was between nineteen and twenty years of age, and earning twelve dollars per week; that she had been emancipated by her parents, was the wife of Floyd E. Lindsay, and was supporting herself while her husband was in the army; that no descendants survived her, but that her husband and father and mother survived her as her sole and only heirs at law and next of kin.

The jury returned a verdict in favor of appellee in the sum of $1,000, and, in answer to interrogatories, found the following facts: The crossing where the decedent was killed was about one and a half miles west of Morristown and outside the corporate limits of any city or town. The highway ran north and south, and the railway straight east at least 3,000 feet. The interurban car was traveling between fifty and sixty miles an hour, was equipped with a brilliant headlight twelve or thirteen feet above the ground and which was burn-

ing brightly, throwing a bright light on the track for 500 feet or more.   It was also equipped with a whistle, which could be heard distinctly for one or two miles, and was sounded as the car crossed Blue River bridge 4,200 feet east of the crossing, and again at a point not less than eighty rods nor more than one hundred rods east of the first highway crossing west of said bridge, and again between eighty and one hundred rods east of the highway at Stop 16.   November 25, 1917, decedent, together with John Meikel, Anna Roach, and James Meikel, left Indianapolis about noon for Shelby-ville in an automobile owned and driven by John Meikel, the decedent occupying the right rear seat.   They reached Shelbyville a distance of twenty-eight miles about four o'clock, started to return about 4:30, and reached Stop 16, fourteen miles from Shelbyville, about 8:10 p.m.   James Meikel, who was in the rear seat with the decedent, had been drinking intoxicating liquor, but the others had not.   The curtains on the automobile were not down and did not obstruct the view of the occupants.   The driver of the automobile was acquaint-ed with the crossing.   When the front of the automo-bile was twenty feet south of the south rail, the inter-urban car was 550 feet east of the crossing; when it was fifteen feet, the interurban car was 450 feet east. The automobile at this time was being driven at a speed of three miles an hour.   When the decedent was fifteen feet from the south rail, her view of said headlight was obstructed by the bank, but at all other intervening points she could have seen it clearly.   Had the driver looked with ordinary care, he could have prevented the injury by stopping, but the decedent, after learning of the approach of the car, could not thereafter have pre-vented the injury.   Appellant's motorman, as soon as he discovered the automobile, did everything within his power to stop the car and prevent the collision.   The

decedent was a married woman, and left her husband surviving her, who had enlisted in the army. A few days before her death, the decedent wrote and directed a letter to her husband expressing a desire that they might again live together as husband and wife. She was employed during 1915, 1916, 1917. In 1915, her earnings were more than $200, in 1916, more than $250, in 1917, more than $300. She had no other income, and her necessary expenses were from five to seven dollars a week.

Appellant contends that the answers to the interrogatories conclusively show that appellant was not guilty of negligence as charged. The complaint, after alleging facts relative to the location of appellant road, the location of the railroad to the south, the cuts through which both roads ran, the obstructions to the east, preventing travelers from seeing and hearing the approach of an interurban car from the east, that decedent was not familiar or acquainted with the road over which she was traveling or the crossing over appellant's railway, alleged that appellant knew the dangerous conditions surrounding said crossing, that the approach of its car from the east could not be seen or heard by travelers on the highway until within a very short distance of the track, that appellant negligently failed to give any warning of the approach of its car until within fifty feet of the crossing, that it also failed to give the statutory signals between eighty and one hundred rods from the crossing and negligently ran its car at a high and dangerous speed, viz., sixty miles an hour.

It is true, as contended by appellant, that the motorman did everything in his power to stop the car after he discovered the perilous situation of the occu-

1. pants of the automobile, and that the facts found by the jury in answer to interrogatories are sufficient to show that appellant was not guilty of any negli-

gence after discovering the presence of the automobile and the perilous situation of those riding therein, so as to prevent a recovery on the doctrine of the last clear chance. This, however, is not sufficient to relieve appellant from prior negligence, if any. The jury, by the general verdict, found that the crossing was dangerous, that appellant knew, or at least ought to have known, of such dangerous condition, and with such knowledge, negligently approached the crossing, running its car at a high and dangerous rate of speed, without giving any warning of the approach of such car. The jury, in answer to the interrogatories, found that the car was equipped with a whistle that could be heard for a mile or more, and that this whistle was sounded between eighty and one hundred rods east of the crossing, as well as at other points farther east and within a mile of the crossing. In *Union Traction Co.* v. *Howard* (1910), 173 Ind. 335, cited by appellant, the burden was on the plaintiff to show want of contributory negligence, while the statutory rule now is that contributory negligence is a matter of defense. As was held in that case, the rate of speed alone would not be negligence. In the instant case, however, it is alleged that no warning was given of the approach of the car. And if the whistle was sounded at the places indicated in the answers to the interrogatories, the jury might and doubtless did conclude that, under the circumstances, it did not amount to a warning. The court in the Howard case, in speaking of the sounding of a gong, said: "If the gong was sounded, and there were still conditions which, from their character or any other reason, did not amount to a warning, the fact that it was sounded would not defeat a recovery." Applying this statement to the instant case, if the whistle was sounded not less than eighty nor more one hundred rods east of the crossing and at other points farther east, and if the

conditions at that crossing were such that the sounding of the whistle at such points did not amount to a warning, the fact that the whistle was sounded as found by the jury would not necessarily defeat a recovery. The general verdict covered failure to give such warning as was necessary under the conditions. Whether the sounding of the whistle at the points where sounded was or was not sufficient was a question for the jury under all the circumstances. *Union Traction Co.* v. *Howard, supra.*

It is also contended that the special facts as found by the jury show that the decedent was guilty of contributory negligence; that the driver of the automobile was her agent; and that his negligence was her negligence. True, there was no compulsion or absolute necessity for the decedent to have taken the trip in the automobile, but the fact that she accepted an invitation to go along with the other passengers in the automobile as a matter of pleasure on her part does not necessarily make the driver of the automobile her agent in driving the car and prevent a recovery. Neither the complaint nor the answers to the interrogatories support the contention that the decedent and the other occupants of the automobile were on any joint enterprise. Neither do the answers show, as a matter of law, that the decedent was guilty of contributory negligence. There was no error in overruling the motion for judgment *non obstante.*

The next contention of appellant is that the evidence shows conclusively that the decedent was guilty of contributory negligence. The complaint alleges and the jury, by its general verdict, found the decedent was not familiar with the highway on which she was traveling or its crossing over appellant's tracks or the dangerous condition of the crossing and that, by reason of the conditions, objects and noises from

the east, could not be seen or heard until she was within a short distance of the interurban track. Three of the four occupants of the automobile were killed. The survivor, Anna Roach, testified that they were traveling slowly between the two railroad tracks. She was sitting in the front seat with the driver, who was her brother-in-law; the lights on the automobile were burning so that she saw the two railroads as the automobile approached them; they stopped fifteen or twenty feet from the track, when she and the driver looked and listened, but saw and heard nothing; she saw the headlight, heard the whistle and collision at the same time. The evidence is conflicting as to the distance a traveler on the highway could see east along appellant's tracks. Some of the witnesses testified that, when ten or twelve feet away, one could see 150 feet east, while others testified that, when twenty feet away, a car could be seen 1,000 or 1,100 feet to the east. The decedent was sitting in the rear seat, which we may safely assume was eight or ten feet from the front of the automobile, so when she was in a position to see the approach of the car from the east, the front end of the automobile was quite close to the track, and it is to be observed that the jury, in answer to an interrogatory, found that when the front of the automobile was twenty feet from the track, the car which struck the decedent was 550 feet from the crossing and approaching it at a speed of between fifty and sixty miles an hour. We are not very favorably impressed with appellant's contention that the evidence is such as compels us to say, as a matter of law that the decedent was guilty of negligence.

The next contention of appellant is that the damages assessed are excessive. This action is prosecuted under §285 Burns 1914, Acts 1899 p. 405, which provides: "When the death of one is caused by the wrongful act or omission of another, the personal representatives of

508    APPELLATE COURT OF INDIANA,

Indianapolis, etc., Traction Co. *v.* Thompson, Admr.—81 Ind. App. 498.

the former may maintain an action therefor against the latter, if the former might have maintained an action, had he or she (as the case may be) lived, against the latter for an injury for the same act or omission. * * * The damages cannot exceed ten thousand dollars; and must inure to the exclusive benefit of the widow, or widower (as the case may be), and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased."

The decedent in the instant case left surviving her a husband and a father and mother. Appellant insists that the beneficiaries in this action are controlled by said §285 Burns 1914, *supra,* and not by the statute of descent, and argues that the statute provides two classes—class 1, consisting of widow or widower and children; class 2, next of kin, including father and mother; and that, where there is a survivor in one class, such person or persons, if more than one, take to the exclusion of all persons in the second class. Applying this contention to the instant case, appellant insists that since the decedent left a husband, he takes to the exclusion of father and mother, and that, since the decedent and her husband had not lived together for over two years, and neither had contributed to the support of the other, and there being no evidence on which to base any pecuniary damages in favor of the husband, the recovery must necessarily be for his benefit and could not be for more than nominal damages.

In *Dillier* v. *Cleveland, etc., R. Co.* (1904), 34 Ind. App. 52, the court said: "The action must be brought, and must be maintained to the end, by the personal representative of the person for whose death the damages are sought. He pursues the remedy, not for the benefit of his decedent's estate, but as a convenient trustee specially designated by the statute to recover and distribute the damages for the beneficiaries recognized as such

by the statute.  Of these there are two classes:  First, the widow and children, if there be such persons; and, second, other persons who are next of kin to the person for whose wrongful death the action is maintained. If there be persons entitled to damages of this first class, the damages would be awarded for the exclusive benefit of such persons.  Persons of the second class would not be entitled to damages, and there could be no recovery for their benefit, if there were persons of the first class entitled."

In *Pittsburgh, etc., R. Co.* v. *Reed* (1909), 44 Ind. App. 635, the decedent left surviving him four sons and three granddaughters, the father and mother of the latter being dead.  These granddaughters were all minors and had lived with the decedent as a part of his family for about twelve years, and were pecuniarily damaged by his death.  Notwithstanding there were members of the first class living (the four sons), it was there held that the action was properly prosecuted for the benefit of the grandchildren, who were members of the second class.  The court, after citing and quoting from *Dillier* v. *Cleveland, etc., R. Co., supra,* said: "But if, as in this case, the decedent left no widow, but left surviving children who were not pecuniarily injured by his death, and at his death there were no beneficiaries of the first class, but there were, at the time of his death and at the time of the trial, beneficiaries of the second class, being next of kin, who were in fact pecuniarily injured by his death, such next of kin come within the intention of the legislature in designating the beneficiaries for whom the action may be maintained.  *  *  *  In the absence of beneficiaries of the first class, who have suffered pecuniary loss, the damages should go to the 'next of kin' shown to have suffered loss as contemplated by the statute and the decisions of the courts construing it."

While the statute provides for two classes of beneficiaries, (1) the widow or widower (as the case may be) and children; (2) next of kin, it provides that the damages shall be "distributed in the same manner as personal property of the deceased." The right to maintain the action is given by the first part of the section, and doubtless if it were not for that part of the section wherein it is provided that the damages shall inure to the exclusive use of the classes of beneficiaries named, the damages when recovered would become a part of the estate of the deceased in the hands of the administrator. But when the provision relative to the beneficiaries and the distribution is considered, it is clear that the funds do not become a part of the general estate, but become a trust fund in the hands of the administrator to be paid to the beneficiaries who, under the law, are entitled to take. If there are none of the first class entitled to take, and there be dependents of the second class, the damages inure for the exclusive benefit of the second class. In other words, if there are any persons in existence of the first class who, under the statute, are entitled to damages as dependents, the damages awarded would be distributed to them, but if there be no one of the first class entitled to damages, the action may be prosecuted for the benefit of the dependents, if any, of the second class.

In the instant case, the decedent left a husband, but the evidence is sufficient to sustain a finding that he had abandoned her without cause and without making any provision for her support. Having thus abandoned his wife, he forfeited his right as husband and widower, and no action could be maintained by the administrator for his benefit. So far as his right to participate in the distribution of her estate or in the distribution of the damages awarded on ac-

count of her death, he is excluded by §3036 Burns 1914, §2498 R. S. 1881, which provides that: "If a husband shall abandon his wife without just cause, failing to make suitable provision for her, or for his children, if any, by her, he shall take no part of her estate." The husband being excluded and there being no children, there are no persons of the first class entitled to damages, and the judgment, if sustained, must be for the benefit of the dependents of the second class, viz., the father and mother.

Appellant contends that the husband having survived, he is entitled to nominal damages, and being so entitled, the whole of the award must be paid 7. to him; that there can be no division of the damages between the first class and the second class. Conceding that there can be no division of the damages between the two classes of beneficiaries, the husband, in the instant case, has no more right in the damages awarded than if he were dead or divorced. There is, therefore, in fact, no member of the first class, and there is ample evidence to sustain a finding that the father and mother were to a certain extent dependent upon the decedent, and we hold, under the facts in this case, that this action was properly prosecuted on their behalf, and that the damages assessed are not excessive.

We are aware of the fact that there are cases holding that where a man has abandoned and deserted his wife and children, and one of his minor children has been killed, that an action cannot be maintained by the administrator for the benefit of the mother of the child. Thus in *Thompson* v. *Chicago, etc., R. Co.* (1900), 104 Fed. 845, it was held that a father who had deserted his family for years had no legal claim upon the earnings of his minor child, the desertion operating as an emancipation, and that since the father was, under the statute, the next of kin and sole heir of a minor son whose

death had been caused by another, an action could not be maintained, because the father by his desertion had sustained no pecuniary damages and because the mother was not the next of kin. *Swift & Co.* v. *Johnson* (1905), 138 Fed. 867, 71 C. C. A. 619, 1 L. R. A. (N. S.) 1161, is to the same effect.

These decisions, however, are of no controlling force in this state, as our statutes, §§267, 285, 3036 Burns 1914, *supra*, are very different from the statute involved in the federal cases just cited.

What we have said concerning the right of the father and mother and the right of the administrator to prosecute this action for their benefit disposes of the contention that the court erred in giving certain instructions.

Appellant also contends that the court erred in admitting and in excluding certain evidence. Some of the evidence admitted over the objection of appellant

8. related to the abandonment of the decedent by her husband and to the pecuniary assistance she had given her father and mother. There was no error in admitting this evidence. Neither was there any error in refusing to permit a witness to testify as to an observation made by him of the approach of a car on appellant's track, such observation being made in the daytime, at a point 100 feet from the track, that being the highest elevation on the highway between the two railway tracks. Appellant offered to prove by this witness that, at that point, he saw a car approaching 900 feet east of the crossing and that such car could be seen from that point until it reached the crossing. But it will be observed that when the decedent and her companions were at the point where this witness made his observation, the car that struck and killed the decedent was much more than 900 feet east of the crossing and

could not have been seen from that point.    There was no error in excluding this evidence.

Other objections are made relative to the admission and exclusion of evidence, but the errors, if any, in this regard were harmless, and it appearing that the merits of the cause have been fairly tried and determined, there was no error in overruling the motion for a new trial.