[No. 22322. Department Two. June 17, 1930.]

GOLDIE McFADDEN, *as Administratrix of the Estate of Oriel McFadden, Deceased, Appellant,* v. NORTHERN PACIFIC RAILWAY COMPANY *et al., Respondents.*[1]

*Homer T. Bone* and *Hayden, Langhorne & Metzger,* for appellant.

*L. B. daPonte* and *J. W. Quick,* for respondents.

FULLERTON, J.—The husband of the appellant, while driving an automobile on a public street of the city of Tacoma, collided with a train of the respondent Northern Pacific Railway Company, receiving injuries from which he died some days later. In this action, the appellant, as administratrix of his estate, sought

[1]Reported in 289 Pac. 1.

to recover in damages for his death. On the trial, at the conclusion of the appellant's evidence in chief, the respondent interposed a challenge to its sufficiency to sustain a recovery. This challenge the trial court sustained, entering a judgment of dismissal.

The street on which the husband of the appellant was driving at the time he met with his death is in the industrial part of the city of Tacoma. It is paved in its center for a width of twenty feet, and in certain parts of the day carries a considerable amount of traffic. At the place of the accident, and for a considerable distance on each side thereof, the course of the street is straight, and its surface comparatively level. The main line of the respondent railway company crosses the street at right angles, and is double tracked. Southerly from the intersection of the main line tracks with the street, a spur track connects with the most westerly of the two main tracks and extends therefrom in a northwest direction, crossing the paved part of the street some thirty feet west of the westerly main track. Its general course is slightly curving.

Prior to the accident, a string of flat cars, twenty-five in number, loaded with logs, had been switched onto the spur track and unloaded. At about 11:45 p. m., on the night of the accident, a switch engine was sent down from the respondent's switching yards to haul out the empty cars. The end car of the string, nearest in the direction of the approach of the engine, was but a few feet back from the northerly side of the street, and the engine, when coupled to the string, stood partly in the street. As soon as the coupling was made, the engine started back, hauling the cars. When the engine started, no vehicle, visible from the position of the engine, was approaching it along the street from either direction.

After the engine had got well started and was

moving the train between six and eight miles per hour, the husband of the appellant, driving an automobile westerly along the street, drove into the moving train, striking it possibly some eight or ten car lengths from its rear end. No witness who was sworn at the trial saw the accident. The wheel tracks of the automobile indicated that the driver discovered the train after he had crossed the two main tracks, as the marks of his car tracks showed that he turned from the paved part of the way to his right onto the unpaved portion of the street and struck the train with the left front of his automobile at a place, estimated by a witness, as some five feet northerly from the paved way. The automobile was almost completely demolished by the blow.

The railway company maintained at the place the usual crossing signs, but no other warning appliances of any kind. There were no lights, bells or other alarms at the place, nor did it station guards at the place while the train was crossing, nor did the city maintain a light at the place. There was evidence of a low hanging fog at and in the vicinity of the crossing, which partially enveloped the train. The witness who drove the injured man from the place of the injury to the hospital testified that the fog was in pockets, causing him, to use his own expression, "to caution myself because the fog was blurring my vision."

The administratrix, as a witness on her own behalf, testified that her husband had worked in the vicinity of the accident for some three years, and was familiar with the surroundings; that his automobile was equipped with good lights and sufficient brakes; and that his eyesight was good.

The foreman of the switching crew that moved the train testified that it was moved in this instance at the usual and customary time; that, while occasionally empty cars were removed from the spur track at other

hours, the usual time was between eleven and twelve o'clock at night.

The appellant does not contend that the respondent, in operating its train in the manner it did operate it, violated any duty or obligation imposed upon it by statute or ordinance, or that its duty was other than the duty of ordinary care as measured by the usual standards. Her contention is that there were here unusual conditions surrounding the place of the accident, making it a question of fact for the jury and not a question of law for the court, whether the respondent, in the operation of its train across the highway, had exercised that degree of care incumbent upon it to prevent injuries to users of the highway.

If the inquiry were confined to the mere question of the negligence of the respondent, there might be point to her contention. But the trial court, when the challenge to the evidence was interposed, was not confined to this inquiry alone. It had the right to take into view the evidence as a whole; that part of it which militated against the person killed, as well as that part of it which was in his favor.

It is our opinion that the trial court did not err in its conclusion. It is no doubt true that a traveler upon a public highway, having no knowledge of its condition, other than that which is apparent to him, may use it in the ordinary and usual way in the faith and belief that no obstructions have been placed therein without adequate and sufficient warning of their presence. Hence, if he, while so using it, unknowingly approaches a railroad crossing at which a train is crossing, which is guarded with nothing more than the usual crossing signs, and the visibility is such that he cannot see it until he approaches so closely that he cannot avoid striking it, he might not be guilty of contributory negligence.

But this was not the situation presented here. The person injured by colliding with the train was familiar with the highway and its surroundings and conditions. He knew of the presence of the railroad crossing, and knew, or was in duty bound to know, the uses that were made of it. He knew that there were no lights, bells, or warning signals of any kind to indicate the location of the crossing tracks, and knew that the tracks were continuously used. To pass over it when the visibility was such that he could not see a train upon it until he was too close to it to avoid running against it, is, in this situation, such contributory negligence as will prevent a recovery. *Bowden v. Walla Walla Valley R. Co.*, 79 Wash. 184, 140 Pac. 549; *Benedict v. Hines*, 110 Wash. 338, 188 Pac. 512; *Miller v. Oregon-Washington R. & Nav. Co.*, 128 Wash. 292, 222 Pac. 475; *Keene v. Pacific Northwest Traction Co.*, 153 Wash. 310, 279 Pac. 756. As we said in the last cited case:

"There was, it is true, a fog, at the time, which more or less obscured his [the injured person's] vision, but this, instead of excusing him from exercising care and caution, rather added to his duty in that respect. If he could not see whether or not he was entering a zone of danger in venturing onto the railway track, it was his duty to take some other means of ascertaining the fact. He could not abandon all caution, take a chance on escaping injury, and, failing to escape, charge his delinquency to another."

The judgment is affirmed.

MITCHELL, C. J., MAIN, FRENCH, and HOLCOMB, JJ., concur.