MORLEY v. CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILROAD CO.

[No. 14,801.   Filed March 26, 1935.   Rehearing denied June 28, 1935.]

516

518

*Schuler McCormick,* for appellant.

*Ewing Emison, H. N. Quigley,* and *S. W. Baxter,* for appellee.

WOOD, J.—The appellant brought suit against appellee by an amended complaint in two paragraphs, to recover damages for personal injuries alleged to have been sustained as the result of a collision between the automobile in which appellant was riding as the guest of her husband, and a freight train being operated by appellee, over a public crossing, located in the state of Illinois.

The material facts alleged in the first paragraph of complaint were: that on August 14, 1931, and for a long time prior thereto, there was a state highway running north and south through Edgar County, Illinois, designated as state road 1; that this highway was intersected by a state highway running east and west through said county and state designated as state road 121; that both of said highways were main traveled highways and paved with concrete to the width of approximately eighteen feet; that the terrain at the intersection of said highways and for miles in each direction therefrom was level; that said highways were smooth and level, with center lines to separate the divergent

courses of travel, and traffic signs and signals were placed at appropriate places for the safety and convenience of the traveling public; that there were drainage ditches along each side of the highway leaving the surface thereof but a few inches above the level of the adjacent fields, which facts were known to appellee; that on the day in question and for a long time prior thereto, the appellee had owned and operated a single track railroad through said county running north and south parallel with state road 1, and about one-half mile west thereof; that appellee's railroad tracks crossed state road 121, at grade at a point about one-half mile west of the intersection of said highways; that this railroad crossing was on an even level with the surface of the highway and the fields thereabout; that neither appellant nor her husband had any knowledge of the existence of said railroad or the fact that it crossed state road 121; that on the day in question, tall corn was growing in the fields on both sides of state road 121, from its intersection with state road 1, to appellee's right of way, obscuring from view of the west bound traveler on state road 121, appellee's railroad track and trains that might be approaching said grade crossing from the north or south; that said facts were known to the appellee; that the track of the appellee at said crossing was filled in between the rails, and paved with substance of color similar to the roadway, the effect of which, together with the level terrain and other surroundings set out, disguised and concealed the existence of the grade crossing and railroad, making it dangerous and hazardous, which facts were known to appellee; that appellee, heedless of the rights of the public and careless of its safety, negligently failed and neglected at said time to erect and maintain any warning, sign, signal or device of any kind or character on each side of said railroad and grade crossing; that because of the danger and

existing hazard as aforesaid, it became and was prudent and necessary for appellee to erect and maintain warning signs and signals at and near said grade crossing, in such manner and position and of such character as to be a notice to the public of the existence and proximity thereof, in the performance of which duty the appellee negligently failed; that at about ten o'clock on the evening in question, appellant was riding as a guest and passenger with her husband at her side, in his Ford automobile, from Vincennes, Indiana, to Peoria, Illinois, where appellant's husband had business; that the weather was unusually cool for that time of the year, and they were riding with the windows of the automobile closed; that the sky was overcast and it was utterly dark; that a light wind was blowing a little west of south; the automobile in which appellant was riding was equipped with standard lights of the factory, adequate and lawful, and were lighted with full power; that appellant's husband was driving at the approximate rate of speed of forty miles per hour after turning onto state road 121 from state road 1; that there was a clear view ahead as he drove west on state road 121 of approximately 200 feet; that the driver of said automobile was under thirty years of age, an experienced motorist of normal vision and was driving in the exercise of due care and caution, both occupants of the automobile keeping a lookout for traffic signs, signals, other traffic and possible obstructions on the way; that the smooth modern highway stretched for miles ahead of them in a level course; that they could not see any light, obstruction, vehicle or train, beyond the place where the rays of their lights met the surface of the highway, and none within the range; that there was no light to the right or left of them over the tall corn; that before appellant and her husband turned onto state road 121, and before they came into vision of even a light at

said grade crossing, then unknown to them, a locomotive pulling a long train of cars had passed said grade crossing going south; that as appellant and her husband came onto state road 121, its light, if it had any, was obscured by tall corn in the field to the south; that no car bearing any light in said train passed the grade crossing before appellant and her husband came up to it; that it was dark and the clouds of smoke from the locomotive described no limits, were indistinguishable against the darkness beyond the range of vision of the headlights of the automobile and against the overcast sky, and became and were an effectual barrier, all unknown to appellant and her husband in the distance between them and the passing train; that as they neared said grade crossing, still going at the approximate speed of forty miles per hour as aforesaid, they drove into said cloud of smoke hovering near the ground between the passing train and the adjacent corn field, without any previous warning of its existence; that appellant's husband slackened his speed as soon as he realized he had driven into a cloud of fog or smoke and as soon as he had time to realize or be aware of the fact that his headlights did not shed sufficient light to enable him to stop within the distance for which he could see ahead, and when within twenty or twenty-five feet from said train of passing freight cars, saw them for the first time, attempted to stop and turned to the left, but too late to avoid colliding with the same. Appellant then described her injuries after which she alleged, that the proximate cause of said injuries was the unlawful operation of appellee's train over and across said railroad crossing in violation of its duty to erect and maintain suitable and adequate warning signs, signals or devices of some kind on the east side of said grade crossing to warn the traveling public of the existence and proximity of said railroad.

The material allegations of the second paragraph of complaint were very similar to those contained in the first paragraph, except, it alleged, that appellee had failed to comply with certain statutes of the state of Illinois, set out in this paragraph requiring railroad companies to erect certain signs along public highways at railroad crossings, warning the traveling public of their existence.

The appellee demurred to each paragraph of complaint for insufficiency of facts to state a cause of action. The memoranda filed in support of the demurrer was upon the ground, expressed in various ways, that the complaint failed to allege that appellee was guilty of any negligence which contributed to or had a causal connection with the collision; that there were no facts alleged showing any duty upon the appellee to erect or maintain warning signs or signals at the crossing; that the appellant's negligence contributed to the injuries; that if there was any cause of action it originated in the state of Illinois; that there were no facts alleged showing a right of action under the laws of that state.

This demurrer was sustained to each paragraph of appellant's complaint, whereupon she elected to abide by the court's ruling on the demurrer, refused to plead further, and judgment was rendered against her that she take nothing by her action. From this judgment appellant appeals, assigning as error for reversal, the sustaining of appellee's demurrer to each paragraph of her amended complaint.

Inasmuch as the acts complained of in each paragraph of the amended complaint occurred in the state of Illinois, we must look to the laws of that state for a declaration of the respective rights and duties existing between the parties to this action. The first paragraph of the complaint seeks recovery

upon the theory of a tortious invasion of appellant's rights by appellee, as established and defined by the common law. We presume that the common law, as recognized and enforced in this state obtains under similar circumstances in the state of Illinois, and is enforced in that state in like manner as we enforce it, until the contrary is made to appear. *Baltimore, etc., R. Co.* v. *Reed* (1902), 158 Ind. 25, 62 N. E. 488; *Wabash R. R. Co.* v. *Hassett* (1908), 170 Ind. 370, 83 N. E. 705. The first paragraph of the complaint does not contain any allegations, intended to overcome this presumption, so its sufficiency to state a cause of action must be determined by the rules of the common law as they existed in this state at the time of the accident.

It is alleged in the complaint that the appellant was a passive guest of her husband, so that contributory negligence upon his part, if any, cannot be imputed to her. But while this is true, the appellant was not exempt from the exercise of ordinary care to avoid danger. Her duty as to care was that of an ordinarily prudent person under a like circumstance and situation at the time of the injury. *Union Traction Co.* v. *Haworth* (1918), 187 Ind. 451, 115 N. E. 753; *Indianapolis, etc., Co.* v. *Thompson* (1924), 81 Ind. App. 498, 134 N. E. 514.

The gravamen of the charge of negligence in the first paragraph of complaint, on the part of appellee is, that it negligently failed to erect and maintain any warning signs or signals of any kind or character on the east side of its railroad or grade crossing; that the proximate cause of appellant's injuries was the unlawful operation of appellee's train over and across the highway in violation of its duty to erect suitable signs or signaling devices.

It is worthy of note, that the appellant does not charge the appellee with any other acts of negligence,

such as failure to give warning of the approach of its train to the crossing by whistle, gong or otherwise; the speed at which it was running; blocking the crossing by permitting the train to stand thereon an unreasonable length of time; running an unguarded cut of cars over the crossing or other acts of negligence frequently attributed to railroad companies in the operation of trains at highway crossings.

Whether or not the crossing in question and the circumstances surrounding the operation of the train across it, presented such a peculiarly hazardous condition, that the failure to erect and maintain signs or other signaling devices, constituted a violation of the duty to use due care, might ultimately become a question for a jury to determine under proper instructions; as a matter of pleading the question is first for the court. The facts showing the conditions which existed at the crossing should be averred in the complaint, so that the court may determine in the first instance, whether the jury could legitimately draw the conclusion therefrom, that a situation of such unusual peril and risk to travelers on the highway existed, so that the absence of signs or other signaling devices of some kind was incompatible with the duty to exercise the care and diligence required by the law. Unrestrained authority conferred on juries to determine the question arbitrarily would make it possible for them to say that the absence of such devices at a crossing constituted amenable negligence whether peculiarly hazardous or not. *Pittsburgh, etc., Co.* v. *Nichols* (1922), 78 Ind. App. 361, 130 N. E. 546.

The common law does not require railroad companies to erect and maintain such warning devices as sign boards, bells or other signaling devices at highway crossings in the country. But, if the facts were properly pleaded, it might be a question of

fact for the jury to determine under proper instructions, whether the railroad company should have erected and maintained a signal or warning device at some particular highway crossing in order to discharge its duty to exercise reasonable care compatible with the obvious danger. *Terre Haute, etc., Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N. E. 740; *Pittsburgh, etc., Co.* v. *Nichols, supra.*

It is not the purpose of a watchman or signaling device at a railroad crossing to warn travelers upon the highway of the presence of a train standing upon or passing over a highway crossing, but to warn and give them notice of trains approaching and about to pass over the crossing, in order to prevent accidents to travelers therefrom. *Pennsylvania R. Co.* v. *Huss* (1933), 96 Ind. App. 71, 180 N. E. 919; *Fuller* v. *Peoria, etc., Co.* (1911), 164 Ill. App. 385; *McGlauflin* v. *Boston & Maine R. Co.* (1918), 230 Mass. 431, 119 N. E. 955; *Nadasky* v. *Public, etc., Co.* (1922), 97 N. J. L. 400, 117 Atl. 478.

In the absence of some peculiar environment the appellee and its employees were justified in assuming that travelers in automobiles properly lighted and driven at a reasonable speed would observe the train of cars passing over the crossing in the night, in time to avoid coming in collision with it. *Cleveland, etc., Co.* v. *Gillespie* (1933), 96 Ind. App. 535, 173 N. E. 708; *Pennsylvania, etc., Co.* v. *Huss, supra; St. Louis-San Francisco Co.* v. *Guthrie* (1927), 216 Ala. 613, 114 So. 215; *Gulf, etc., R. Co.* v. *Holefield* (1929), 152 Miss. 674, 120 So. 750; *Gallagher* v. *Montpelier, etc., R. Co.* (1927), 100 Vt. 299, 137 Atl. 207; *Hendley* v. *Chicago, etc., Co.* (1929), 198 Wis. 569, 225 N. W. 205; *Scott* v. *Delaware, etc., Co.* (1928), 222 App. Div. (N. Y.) 409. *Gilman* v. *Central, etc., R. Co.* (1919), 93 Vt. 340, 107 Atl. 122, 16 A. L. R. 1102; *Gage* v. *Boston, etc.,*

*Ry. Co.* (1914), 77 N. H. 289, 90 Atl. 855, L. R. A. 1915-A. 363; *Trask* v. *Boston, etc., R. Co.* (1914), 219 Mass. 410, 106 N. E. 1022; *Philadelphia, etc., Ry. C.* v. *Dillon* (1921), 31 Del. 247, 114 Atl. 62; 7-8 Huddy, Cyc. of Automobile Law (9th Ed.), sec. 32, p. 107.

Furthermore, in the absence of some statutory requirement, the running of the train across the highway without lights or other signals to disclose its ██ presence was not negligence *per se*, and as to injuries received by running into appellee's moving train, its obstruction of the highway cannot be considered as the proximate cause of said injuries, but merely as a condition which in and of itself furnishes no cause of action. *Cleveland, etc., Co.* v. *Gillespie, supra; Pennsylvania, etc., Co.* v. *Huss, supra;* 7-8 Huddy, Cyc. of Automobile Law, (9th Ed.), sec. 37, p. 128, and authorities cited.

The fact that neither appellant or her husband was familiar with the highway over which they were traveling and possessed no knowledge of the presence ██ of the railroad crossing was no fault of appellee.

If they chose to travel upon a strange highway at night, it was their duty to use care commensurate with the increased hazard, if any. *Anspach* v. *Philadelphia, etc., Co.* (1909), 225 Pa. 528, 74 Atl. 373, 28 L. R. A. (N. S.) 382; *Serfas* v. *Lehigh, etc., Co.* (1921), 270 Pa. 306, 113 Atl. 370, 14 A. L. R. 791.

We do not think that the allegations of the first paragraph of complaint disclose a set of facts from which it may be legitimately inferred that the appellee ██ created or maintained a condition at the crossing in question of unusual peril, when tested by the requirements of and the presumptions indulged under the common law controlling the reciprocal rights and duties of appellant and appellee. One of the distinguishing features of this case is the fact that the appel-

lant was not hit by a train as she attempted to pass over the crossing, but that appellant's husband ran his automobile into the side of a freight train as it was passing over the crossing, so we are required to examine the materiality and sufficiency of the facts alleged in this paragraph of complaint with the dissimiliarity from the facts in many crossing cases in mind. In other words, under the circumstances as alleged, did the appellee fail to perform some duty which it owed to appellant, which, had it been performed would. have prevented the injury? Appellant alleged that state road 121 was a transcontinental highway and was used by the traveling public from far and near to reach places on its route, but there is no allegation that it was subjected to heavy or unusual traffic. The complaint further alleged that the terrain at the intersection of the two highways and for miles in each direction therefrom was level, and that the appellee's railroad located approximately one-half mile west from the intersection of the two highways consisted of a single track which was on a level with the surface of the highway at the place of crossing. It was also alleged, that state road 121 was a smooth, modern highway and stretched for miles. in a level course ahead of appellee and her husband. There is no allegation of any obstruction to the view of the crossing of any kind or character, except the tall corn which at that particular time happened to be growing in the fields upon each side of state road 121. This corn we assume, in the absence of any allegation to the contrary, was upon private property, was a condition neither created or maintained by appellee, and that it had no authority to remove it and if it obstructed a view of the railroad track it was a condition which could not be attributed to any negligence on the part of appellee. 7-8 Huddy, Cyc. of Automobile Law. (9th Ed.) sec. 37, p. 129. It is a matter of common knowledge that the ,

corn was not a permanent obstruction, but at most would last but a few months during the year. But whether the appellant or her husband had their view obscured as they approached the railroad crossing from the east because of tall corn, so that they could not see a train approaching the crossing from either direction and no light visible either to the right or the left over the tall corn is beside the question, for the appellant does not seek to recover because of some violation of duty owed to her by appellee as its train approached the crossing, but because of failure to give warning of the presence of its railroad track and that its train was passing over the crossing. The highway was smooth and level for miles ahead of the travelers, so that the tall corn did not obstruct their view of the train as it was passing over the crossing.

Appellant also complains because appellee paved the highway between the rails of its track with substance of approximately the same color as the surface of the highway, which together with the level terrain and other surroundings disguised and concealed the crossing and made it hazardous and dangerous. There is no allegation in this paragraph of complaint that the appellee had adopted a method or manner of paving between the rails of its track, unusual or different from that usually resorted to under like conditions or that it was dangerous for automobiles to drive over the crossing. But this contention is also beside the question in the instant case. Here the appellant did not have to depend upon the difference in color between the paving inside the rails of the railroad track and the paving leading up to the track for notice of the existence of the crossing, for the freight train was already upon and passing over the crossing when appellant and her husband approached and ran into the side of it, so it is reasonable to assume that if the freight

train passing over the crossing was not sufficient notice to appellant and her husband of the existence of the railroad track, that a difference in the color of the two paving materials would not have been any more impressive as a notice to travelers on the highway of the existence of the railroad crossing.

In the Gillespie and Huss cases, *supra*, recently decided by this court, in both of which cases a petition to transfer to the Supreme Court was denied, this court said it was negligence as a matter of law for the driver of an automobile to operate it in the night-time at such a rate of speed that it could not be brought to a stop within the distance that objects could be seen ahead of it. Many authorities are collected and cited in each case supporting this statement.

It is contended by appellant that the allegations of the paragraph of complaint under consideration excludes it from the application of the above rule. The authorities do not sustain appellant's contention. This paragraph of complaint alleges that the night was dark, that clouds of smoke from the engine described no limits and were indistinguishable against the darkness beyond the range of vision of the headlights of the automobile and against the overcast sky and became and were an effectual barrier, all unknown to appellant and her husband in the distance between them and the passing train, thus describing an atmospheric and weather condition, for the creation and existence of which the appellee was in no way at fault. It was also alleged that there was a clear view ahead of the automobile for a distance of 200 feet, so it is to be presumed that if the appellant and her husband looked they saw the clouds of smoke for at least that distance ahead of them, for it is further alleged that the husband, driver of the car, was under thirty years of age, an experienced motorist possessed of normal

vision. But so far as the facts pleaded disclose, without any warning or admonition from appellant, he drove his automobile into the clouds of smoke at the rate of 40 miles per hour, or 58 2/3 feet per second, making no effort to retard its speed until they were completely enveloped in the clouds of smoke hovering near the ground, and continued to drive at such a speed that when he first saw the passing train he was only 20 or 25 feet from it, then for the first time attempted to stop but was too close to avoid a collision. How far he drove into the clouds of smoke after he realized that the headlights on the automobile did not shed light sufficient to enable him to stop within the distance he could see ahead does not appear from the facts pleaded.

The presence of the clouds of smoke, whether discovered before or after they had driven into them, was notice to appellant and her husband that they were in close proximity to a railroad track and a locomotive engine, and it was the duty of her husband to immediately slacken the speed of the automobile so it could be brought to a stop within the range of his vision or to stop his automobile until the clouds of smoke had been dissipated and cleared away. His neglect to do so was a failure to exercise ordinary care for the safety of appellant and himself. *Oleson* v. *L. S. & M. S. Ry. Co.* (1895), 143 Ind. 405, 42 N. E. 736, 32 L. R. A. 149; *Cleveland, etc., Co.* v. *Gillespie, supra; Pennsylvania R. Co.* v. *Huss, supra; Wasson* v. *Illinois, etc., Co.* (1927), 203 Ia. 705, 213 N. W. 388; *Acker* v. *Union Pac. R. Co.* (1920), 106 Kan. 401, 188 Pac. 419; *Keene* v. *Pacific, etc., Co.* (1929), 153 Wash. 310, 279 Pac. 756; *Morser* v. *Southern Pac. Co.* (1927), 124 Or. 384, 262 Pac. 252; *Lauson* v. *Fond du Lac* (1910), 141 Wis. 57, 123 N. W. 629, 25 L. R. A. (N. S.) 40; *Yano* v. *Stott Briquet Co.* (1924), 184 Wis. 492, 199 N. W. 48; *Fannin* v. *Minneapolis, etc., Co.* (1924), 185 Wis. 30,

200 N. W. 651; *Toledo Terminal R. Co.* v. *Hughes* (1926), 115 Oh. St. 562, 154 N. E. 916; *Pennsylvania R. Co.* v. *Rusynik* (1927), 117 Oh. St. 530, 159 N. E. 826, 56 A. L. R. 538; *McFadden* v. *Northern, etc., Ry. Co.* (1930), 157 Wash. 437, 289 Pac. 1; *Fuller* v. *P. & P. Union Ry. Co.* (1911), 164 Ill. App. 385.

In addition to the facts alleged in the first paragraph of complaint, as already suggested, the second paragraph charges the appellee with failure to erect and maintain warning signs at the crossing as required by two statutes in force in the state of Illinois. These statutory provisions are set out in this paragraph of complaint. One provides that at grade crossings outside of cities, railroad companies shall maintain such signs as the Illinois Commerce Commission may order, and in the event a crossing is designated as extra hazardous, then signs, the character of which shall be determined by the commission, shall be placed 200 feet in each direction from such crossing. There are no facts alleged in this paragraph of complaint showing that said commission had ever made any order for the erection or maintenance of any signs of any kind or character at this crossing, so that insofar as the paragraph is dependent upon this provision of the statute it fails to state a cause of action. The other section of the statute requires every railroad corporation to cause signs to be placed and constantly maintained upon each public road where the same is crossed by its railroad. Except as modified by this section of the Illinois statutes, the sufficiency of this paragraph of complaint to state a cause of action must be determined by the same rules of law applied in testing the sufficiency of the first paragraph.

The failure of the appellee to erect and maintain the crossing signs required by the statute as alleged in the

second paragraph of complaint would be negligence *per se,* but this fact, in and of itself, would not be sufficient to entitle the appellant to recover damages from the appellee, unless it was made to appear that the injuries complained of flowed directly therefrom as a proximate result of the wrongful act, unaffected by the contributory negligence of appellee. *Cleveland, etc., Ry. Co.* v. *Taner* (1911), 176 Ind. 621, 96 N. E. 758; *Wabash R. Co.* v. *McNown* (1913), 53 Ind. App. 116, 99 N. E. 126, 100 N. E. 383; *Terre Haute, etc., R. Co.* v. *Voehler* (1889), 129 Ill. 540, 22 N. E. 20; *Latham* v. *Cleveland, etc., R. Co.* (1913), 179 Ill. App. 324.

The burden would also rest upon the appellant to allege and prove that she was included within the class of travelers for whose protection the statute was enacted. *Baltimore, etc., Ry. Co.* v. *Bradford* (1898), 20 Ind. App. 348, 49 N. E. 388; see note to *Wolf* v. *Smith* (1906), 149 Ala. 457, 42 So. 824, 9 L. R. A. (N. S.) 338.

In the case of *McGlauflin* v. *Boston, etc., R. Co., supra,* the plaintiffs sought to recover damages for injuries sustained when an automobile in which they were riding collided with a freight train of the defendant standing on a highway crossing. The accident occurred after eight o'clock at night. The only act of negligence relied upon as ground for recovery was the failure of an electric gong, which was maintained at the crossing, to ring. In denying the plaintiff's right to recover in this case the court said (p. 434) : "Even if this appliance were maintained by the defendant because required to do so under the authority of the statute, its purpose was to protect travelers on the highway from the danger of approaching trains, and not to warn the public against cars and engines which were standing still. A plaintiff can-

not recover for the violation of a statute unless there is a causal connection to which the statute applies." See *White* v. *New York, etc., Ry. Co.* (1909), 200 Mass. 441, 86 N. E. 923. From the allegations in this paragraph of complaint it is very apparent that neither the appellant nor her husband were prejudiced or misled by a failure to comply with the statutory provision, for if, under the conditions alleged to exist at the crossing, they were unable to see an object as large as a passing freight train in time to avoid running into the side of it, it is reasonable to conclude that any signs or warning signals which might have been erected and maintained at the crossing would have been entirely obscured from their vision, because of darkness and clouds of smoke, so the alleged injuries suffered by her cannot be attributed to their absence. *Serfas* v. *Lehigh, etc., R. Co., supra.*

In the case of *Balzer* v. *Waring* (1911), 176 Ind. 585, 95 N. E. 257, 48 L. R. A. (N. S.) 834, our Supreme court said: "Proximate cause is that act which immediately causes, or fails to prevent, an injury that might reasonably have been anticipated would result from the negligent act or omission charged, and without which such injury would not have occurred. The test is to be found in the probably injurious consequences which were to be anticipated, and not in the number of subsequent events or agencies which might arise to bring about such consequences."

In the case of *Gage* v. *Boston, etc., R. Co., supra,* the Supreme Court of New Hampshire, in holding that there was no liability on the part of the railroad company in a case where the facts were quite similar to those in the case under consideration, said (p. 295): "While the question of proximate cause, including the question of the defendant's duty of anticipating or foreseeing that the result might naturally happen, is ordi-

narily one of fact for the jury, this rule 'is necessarily subject to the limitation affecting the submission of all questions of fact to the jury: that if on the evidence reasonable men can come to only one conclusion, there is no question for their decision.' . . . And when, as in this case, it cannot be said that the defendant was chargeable with knowledge that for some undisclosed cause an automobile was likely to run into its train on the crossing, the jury is not permitted to find that the defendant's act or omission to act was the cause of the plaintiff's injuries. 'From the fact of injury no presumption arises as to the guilt or innocence of either party.' . . ."

The facts as alleged in each paragraph of the amended complaint show that appellee did nothing more than create a condition in running its freight train over the highway crossing by which the injury, because of the subsequent independent act of appellant's husband, occurred. Appellee's act was merely a condition and in no sense a concurring proximate cause of appellant's injury. *Cleveland, etc., R. Co.* v. *Gillespie, supra; Pennsylvania, etc., Co.* v. *Huss, supra; Orton* v. *Pennsylvania, etc., Co.* (1925), 7 Fed. (2nd) 36; *Bruening* v. *Miller* (1930), (S. D.), 230 N .W. 754.

Finding no error the judgment is affirmed.